# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2292

ROGELIO PROMOTOR,

*Petitioner-Appellant*,

*v.*

WILLIAM POLLARD, Warden,
Green Bay Correctional Institution,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-CV-00363—**J.P. Stadtmueller**, *Judge*.

ARGUED NOVEMBER 12, 2009—DECIDED DECEMBER 14, 2010

Before CUDAHY, MANION, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* On April 8, 2003, Rogelio Promotor got drunk, drove at speeds up to 86 miles per hour, tore through two red lights, and crashed into a passing car. He killed four people and severely injured two others. He pleaded no contest in Wisconsin state court to four counts of homicide by intoxicated use of a motor vehicle and two counts of causing injury by intoxicated use of a motor vehicle.

Before sentencing, Promotor cooperated in the creation of a defense pre-sentence investigation report which stated that Promotor consumed up to 23 beers in the hours preceding the crash. The court mentioned the "23 beers" figure twice when it sentenced Promotor to 66 years of imprisonment and 28 years of supervised release.

Promotor filed post-conviction requests for relief with the Wisconsin state courts, which were denied. He then filed a petition for a writ of habeas corpus in federal court. He asserted that his due process rights were violated because he was sentenced based on inaccurate information—the 23 beers figure from the defense pre-sentence report. He also argued that he received ineffective assistance of counsel. The district court denied the petition, finding that Promotor procedurally defaulted his due process claim by not objecting to the information in his pre-sentence report. Promotor requested, and the district court granted, a Certificate of Appealability on this question, and on whether the Wisconsin state courts violated Promotor's due process rights by sentencing him based on inaccurate information.

We agree with the district court that Promotor procedurally defaulted his challenge to the allegedly inaccurate information in the pre-sentence report because he failed to object to it. There is no valid cause that excuses this default. And even if he had not defaulted his claim, Promotor did not demonstrate that the trial court relied on materially incorrect information in his sentencing.

Promotor also requested a Certificate of Appealability on his ineffective assistance of counsel arguments. The

district court denied this request, finding that Promotor procedurally defaulted his claim by failing to fully and fairly present it to the Wisconsin Supreme Court. Promotor asks that we expand his Certificate of Appealability to address these arguments. Because we agree with the district court that Promotor procedurally defaulted his ineffective assistance of counsel claim, we decline to expand the Certificate of Appealability.

We affirm the district court's decision.

## I. BACKGROUND

On April 8, 2003, after drinking with his friends, 19-year-old Rogelio Promotor decided to drive. He sped through a residential area and drove through a red light. Witnesses described him as "careening" and "swerving" down the street, and an accident reconstruction later estimated his speed at between 77-86 miles per hour. He drove through a second red light and crashed into another passing car. Travis Cates, Antonio Mazaba, Michael Popp, and Troy Vanderhei were killed. Shaun Foerster and Laura Lewis were severely injured.

Promotor does not remember driving or the subsequent collision. Approximately two hours and forty minutes after the crash, his blood alcohol concentration was measured at .161 g/dL. He pleaded no contest in Wisconsin state court to four counts of homicide by intoxicated use of a motor vehicle and two counts of causing great bodily harm by intoxicated use of a motor vehicle.

Before sentencing, Promotor participated in the creation of an "Alternative Presentence Investigative Report" ("Alternative Report"). The report was prepared by a "Sentencing & Disposition Specialist" at the request of Promotor's attorney. The Specialist used a Spanish-language interpreter during his interviews with Promotor. The report was designed to supplement information provided in the Department of Corrections ("DOC") Pre-sentence Report, and to offer a more detailed picture of Promotor, his background, and experiences. The Alternative Report described Promotor's upbringing, including the fact that he started working while in grade school and dropped out in the sixth grade so he could earn more money and help support his family. Promotor indicated that he is literate in Spanish, but not in English. The report continued by describing some of Promotor's personal relationships, including his interactions with his alcoholic father. His father was a chronic binge drinker who was often physically abusive to Promotor. The report also described Promotor's own problems with alcohol. Although he generally limited his drinking to the weekends, he also drank alcohol secretly at work. His mother was concerned about Promotor's drinking, and lectured him on several occasions. His girlfriend asked him to stop drinking entirely. His usual habit was to drink up to 12-15 cans of beer with friends, and, the report stated that on at least one occasion, Promotor consumed a case of beer by himself, which made him sick.

Under a section entitled, "Client's Version of Offense and Surrounding Circumstances," the Alternative Report

detailed Promotor's alcohol consumption on the day of the collision. He first had 15-16 cans of beer from a case of 24. When that case was finished, one of Promotor's friends bought a second one, and Promotor had another six beers. Promotor recalled starting to drink one more beer from a third 24-case but did not remember anything after that. Added together, the Alternative Report describes Promotor drinking 22-23 cans of beer on the day of the fatal crash.

Promotor's sentencing hearing was lengthy, and a Spanish-language interpreter was present the entire time. First the surviving victims spoke. Next to speak were the families of the victims who were killed. Videos and letters were also submitted on behalf of the victims' friends and families. Both the Alternative and DOC sentencing reports were then presented. The court had previously reviewed each report and found typographical errors and other small mistakes. It suggested corrections, and for each revision, asked the prosecutor and Promotor's attorney if there was any objection to the proposed change. The court asked defense counsel if he had "any other additions, deletions, or revisions to the defense PSI". Defense counsel answered, "No, your Honor." In reviewing the DOC pre-sentence report, Promotor and his attorney discussed individual issues at least three times, and each time Promotor's attorney stated that there was no objection to the requested change.

Following the review of the pre-sentence reports, the prosecutor detailed the plea negotiations. The court asked Promotor if he understood the sentence that the

state was recommending; if he understood that his attorney was free to argue on his behalf; and if he understood that the court was not obligated to follow their negotiations. Promotor replied "yes" to each question. The attorneys then presented their sentencing recommendations to the court: first the prosecutor, then Promotor's attorney. Promotor's attorney noted that "this is extremely tough for everybody. . . . Even the person . . . who did the [Alternative] report. Everybody. Even my investigator. Everybody . . . that's involved with this case is taken aback at how devastating and how sad it is for everybody involved. . . . Mr. Promotor is both remorseful and takes full responsibility for his actions."

Promotor's mother was next to speak. She revealed her suffering over the incident, and how it affected her entire family. The court then noted the letters that were submitted in support of Promotor, including one from his 10-year-old brother. The final step before the court announced its sentence was Promotor's allocution. Promotor stated: "The only thing I'd like to say is I apologize to the family and for you to forgive me. . . . I am very sorry for what has happened, but I leave it in God's hands as far as what's going to happen now."

The court began its statement of sentencing by describing how it arrived at its decision. It first considered the offense severity, then Promotor's character, and finally how much of a future risk he posed. The offense severity was "of the most serious nature". It was "a quadruple homicide by use of a vehicle with a prohibited blood alcohol content and a double injury by

intoxicated use of a vehicle with a prohibited blood alcohol content. For those reasons, this is a case of the most aggravated offense severity." Second, as to Promotor's character, the court noted his young age, and that he had spared the victims' families and friends the trauma of a jury trial. Additionally, he commended Promotor's consistent employment and good work ethic. He also noted that Promotor did not have any weapons, drug, or violent convictions. But the court also noted Promotor's "horrible" driving record and underage drinking: he had been arrested four times for driving without a license, twice for underage drinking, and on seven occasions bench warrants were issued for his arrest because he failed to appear in court. The court said that the prior incidents should have been "warning signs for you". Finally, the court decided the future risk to the community was high because Promotor "did not learn better notwithstanding those warning signs." Twice, the court noted the 23-beers figure from the Alternative Report. Promotor was sentenced to 66 years of initial confinement followed by 28 years of extended supervision. The court stated that under Wisconsin's truth in sentencing policy, Promotor would serve the 66 years day-for-day. Promotor's sentence meant he would be in prison until age 85.

Promotor filed a motion for post-conviction relief. He argued that he was sentenced based on the 23-beers figure in the Alternative Report, which was inaccurate. He submitted an affidavit stating that he did not tell the interviewer or anyone else that he drank 23 beers. He

remembered saying he may have had as many as 15 beers in total, but that it was more like 13 or 14. He also said that the Alternative Report was not read to him in Spanish before his sentencing hearing, that the sentencing hearing was the first time he heard the 23-beers figure, and that he was confused when the judge used the number. Promotor also submitted an affidavit from his post-conviction counsel that included witness statements taken from police reports. Both witnesses were with Promotor on the night of the crash. One witness said Promotor drank 12-13 beers; the second said Promotor had eight or more beers and then another four or five more. Finally, Promotor submitted an affidavit of a chemist and forensic consultant. That affidavit stated that based on Promotor's blood alcohol measurement of .161 g/dL at 2:10 a.m., it was unreasonable and unlikely that Promotor consumed 23 beers if he began drinking at the time he said he began. The required alcohol levels would kill most people, or at best leave them comatose. Even chronic alcoholics would not typically exhibit the calculation pattern that would be required for Promotor to have consumed 23 beers in the described time frame. The affidavit concluded that Promotor consumed somewhere between nine and 13 beers on the night of the crash.

The same judge who presided over the sentencing hearing denied Promotor's motion for post-conviction relief. He held that Promotor waived his objection to the 23 beers figure by not disputing it. And even if the argument had not been waived, Promotor did not offer clear and convincing evidence that the information in the report was inaccurate. Finally, the court concluded that

even if the information in the report was inaccurate, Promotor did not meet his burden of showing by clear and convincing evidence that the court prejudicially relied on the 23 beers figure. The court stated in its order denying post-conviction relief that "[w]hether it was nine to 13 beers, . . . or 22-23 beers . . . the defendant was so alcohol-impaired that he had no recollection of his crimes."

Promotor filed a notice of appeal from the judgment of conviction and the decision denying his postconviction motion. The Wisconsin Court of Appeals held that Promotor waived his argument of alleged inaccuracy in the report when he failed to object at sentencing. The court then addressed the claim as one of ineffective assistance of counsel and found that even if Promotor's attorney erred, Promotor was not prejudiced because the sentence would have been the same even if the court had originally been given a lower figure for the number of beers Promotor consumed. Promotor filed a petition for review in the Wisconsin Supreme Court, which was denied.

Promotor filed a timely petition for a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. He argued that the Wisconsin courts violated his due process right to be sentenced based on accurate information and that he had not waived that argument. He also argued that he received ineffective assistance of counsel. The district court denied the petition. It ruled that the due process claim was procedurally barred

because the Wisconsin Court of Appeals' finding of waiver constituted an adequate and independent state law ground that could not be reviewed absent cause and prejudice. Further, the court ruled that Promotor procedurally defaulted his ineffective assistance of counsel claim by failing to adequately address it in his petition to the Wisconsin Supreme Court.

Promotor requested a Certificate of Appealability ("COA") from the district court. The court granted a COA as to whether Promotor procedurally defaulted his due process claim and whether the Wisconsin state courts violated his due process rights by sentencing him based on inaccurate information. It denied a COA on Promotor's challenge regarding ineffective assistance of counsel. Promotor timely appealed. At issue before this court is whether Promotor's failure to object to the 23 beers figure at sentencing constitutes a procedural bar to his claimed due process violation. Promotor also asks us to expand his COA to address his ineffective assistance of counsel claims.

## II. ANALYSIS

### A.  Due Process Claim was Procedurally Defaulted

Promotor petitioned the federal district court for a writ of habeas corpus, asserting that his due process rights were violated because he was sentenced based on inaccurate information. The court denied his petition, ruling that the due process claim was procedurally barred because the Wisconsin Court of Appeals' finding of

waiver was an adequate and independent state law ground. We review the district court's findings of fact for clear error and its rulings on questions of law de novo. *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009); *Foster v. Schomig*, 223 F.3d 626, 634 n.4 (7th Cir. 2000).

Generally, a federal court may not grant habeas relief if the state court's decision was based on an adequate and independent state law ground. *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010). The adequacy of the state ground decision is a question of federal law, and the ground is considered adequate only if the state court applies the rule in a consistent and principled way. *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). An adequate and independent state law ground does not, however, absolutely preclude review of a procedurally defaulted claim during federal habeas review. An equitable exception exists if the petitioner can establish cause and prejudice for the default, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Johnson v. Loftus*, 518 F.3d 453, 455-56 (7th Cir. 2008).

### 1. Waiver is an Adequate and Independent State Law Ground

Promotor contends that the state court's finding of waiver was not an adequate and independent state law ground because Wisconsin's application of waiver law was unsettled at the time of his sentencing. He further argues that even if the law were settled, cause and preju-

dice precludes a finding of default. We reject these arguments.

Promotor accurately argues that a procedural default does not bar consideration of a federal claim unless the procedure is a "firmly established and regularly followed state practice." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Further, the state rule at issue must have been consistently applied at the time of the alleged default. *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999). In support of his position that waiver law was not firmly established in Wisconsin in 2003, Promotor offers *State v. Groth*, which states: "Whether, given the paramount importance of the integrity of the sentencing process, waiver may be invoked to preclude a defendant's challenge to a sentencing based on inaccurate information remains unclear; the cases the parties cite simply do not say." 258 Wis.2d 889, 655 N.W.2d 163, 172 (Wis. Ct. App. 2002) (internal citations and quotations omitted), *abrogated on other grounds by State v. Tiepelman*, 291 Wis.2d 179, 717 N.W.2d 1 (2006). In *Groth*, the prosecutor repeatedly asserted, without any support in the record, that the defendant beat his pregnant girlfriend. Because there was no support in the record for the inflammatory statements and the court apparently relied on them, the court found that the integrity of the sentencing process required resentencing. *Groth*, 655 N.W.2d at 173. *Groth* is distinguishable from this case for significant reasons. The inaccurate information in *Groth* came from the prosecutor, not the defense. And there was no factual basis for the information, but here, the information was submitted in a pre-sentence report

and reviewed before filing. The most important aspect of *Groth*, though, is that the court decided that the interests of justice required excusing the waiver.

*Groth* aligns with the regular practice of Wisconsin courts, which have consistently found that a party who fails to object at the trial court waives the right to later appeal that issue *unless justice so requires*. This general principle was described in *State v. Holt*: "The general rule that an objection not made to the trial court is waived is rooted in principles of efficient judicial administration. Those principles demand that convictions remain in repose unless error has been committed or an injustice has been done." 128 Wis.2d 110, 382 N.W.2d 679, 686 (Wis. Ct. App. 1985), *superseded by statute on other grounds by* WIS. STAT. § 940.225(7). *See also State v. Boshcka*, 178 Wis.2d 628, 496 N.W.2d 627, 632 (Wis. Ct. App. 1992) ("unobjected-to errors are generally considered waived; and the rule applies to both evidentiary and constitutional errors.") And this rule has been repeatedly applied to defendants, like Promotor, who fail to object to allegedly inadmissible or inaccurate information. *See, e.g., State v. Gove*, 148 Wis.2d 936, 437 N.W.2d 218, 218 (1989) (defendant who "actively contributed to what he now claims was trial court error" waived right to contest error); *Handel v. State*, 74 Wis.2d 699, 247 N.W.2d 711, 714 (1976) (court did not err in considering facts in pre-sentence report that were not challenged by defendant).

As a general rule, Wisconsin courts find waiver if information is not objected to at the trial court. And this

was true in 2003 at the time of Promotor's sentencing. But there is a difference between a consistent application and an absolute application. A regular practice may still, in the interest of justice, allow room for flexibility. *See, e.g., State v. Leitner*, 247 Wis.2d 195, 633 N.W.2d 207, 215 (Wis. Ct. App. 2001) (choosing to "ignore the . . . waiver rule" because the case presented an important recurring issue). Wisconsin courts have regularly followed the rule that information that is not contested at trial cannot be objected to later. The exceptions do not disprove the rule. We find that Wisconsin waiver law was applied in a consistent and principled way, and therefore constitutes an adequate and independent state law ground that cannot be reviewed absent cause and prejudice.

### 2. Cause and Prejudice Exception Does Not Apply

Even though Promotor procedurally defaulted his claim regarding the allegedly inaccurate information in the Alternative Report, the default could be excused if he can establish cause and prejudice, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Dretke,* 541 U.S. at 388; *Loftus*, 518 F.3d at 455-56. Promotor does not argue that failure to consider his defaulted claim will result in a fundamental miscarriage of justice. Instead, he asserts that a language barrier provides cause to excuse his default. Alternatively, he argues that the waiver was due to the deficient performance of his attorney. Both of these arguments must fail.

Cause for a default is ordinarily established by showing that some type of "external impediment" prevented the petitioner from presenting his claim. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (emphasis in original) (citation omitted). According to the Alternative Report, Promotor speaks Spanish, and is not literate in English. He argues that this establishes cause to excuse his defaulted objection. But we have found that circumstances such as youth and lack of education—which similarly impede communication—do not constitute cause. *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002). And we have also explicitly held that illiteracy does not constitute cause. *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990). In addition, during Promotor's lengthy sentencing hearing, where a Spanish-language interpreter was present the entire time, the court proceeded methodically through each pre-sentence report. It suggested small typographical corrections and asked each party if any other "additions, deletions, or revisions" were necessary. At least three times during the court's discussion of the DOC pre-sentence report, the record reflects that there were private attorney-client discussions between Promotor and his lawyer. After each discussion, his lawyer stated whether Promotor agreed with the proposed change to the report. These discussions show that Promotor was not prevented from voicing disapproval, and in fact was given ample opportunity to express any

objections. Thus his failure to also object to aspects of the Alternative Report was an internal decision, not an external impediment.

Alternatively, Promotor argues that cause to excuse his procedural default exists because he received ineffective assistance of counsel. Ineffective assistance of counsel can constitute cause to set aside a procedural bar. *Gaetz*, 565 F.3d at 352. However, a claim of attorney ineffectiveness which is defaulted in state court cannot be the basis for cause, unless the petitioner can establish cause and prejudice for the ineffectiveness claim as well. *See Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000). And as discussed in Section C below, Promotor defaulted his ineffective assistance of counsel claim and he does not offer cause-and-prejudice to excuse this default.

Promotor does not establish cause to excuse his procedural default and because he cannot establish cause, we will not address the prejudice prong. By not objecting to the allegedly inaccurate information in the Alternative Report, Promotor lost his ability to later contest it. His default is not excused. The district court was correct in reaching the same conclusion.

### B.  Due Process Claim Fails

Even if Promotor had not procedurally defaulted his due process claim, it would fail.

Because the habeas petition in this case was filed under the AEDPA, the standard of review contained in that Act governs this appeal. *Lindh v. Murphy*, 521 U.S. 320, 322-

23 (1997). When the state court has decided its case on the merits, a federal court can grant a writ of habeas corpus only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Promotor argues that this deferential standard of review should not apply to his due process claim because the Wisconsin Court of Appeals did not directly address the merits of the claim in finding that it was procedurally barred. However, in discussing the merits of Promotor's ineffective assistance of counsel claim, the court did make factual findings that are vital to the due process claim, and we will employ the deferential standard of review that the AEDPA prescribes in evaluating these findings.

Promotor contends that his due process rights were violated because he was sentenced based on inaccurate information. He argues that a defendant has a constitutional due process right to be sentenced based on accurate information. He is correct. *See, e.g., Ben-Yisrayl v. Buss*, 540 F.3d 542, 554 (7th Cir. 2008) (citing *Townsend v. Burke*, 334 U.S. 736 (1948) and *United States v. Tucker*, 404 U.S. 443 (1972) for "the general proposition that a criminal defendant has the due process right to be sentenced on the basis of accurate information."). But not all inaccuracies deprive a defendant of due process; the incorrect information must be "materially untrue". *Townsend*, 334 U.S. at 741. And a defendant who requests resentencing must establish that the sentencing court also *relied* on the critical inaccurate information when

announcing its sentence. *Simonson v. Hepp*, 549 F.3d 1101, 1107 (7th Cir. 2008). A sentencing court demonstrates actual reliance on misinformation when "the court gives explicit attention to it, founds its sentence at least in part on it, or gives specific consideration to the misinformation before imposing sentence." *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003) (quotations omitted).

If the "23 beers" figure in the Alternative Report was materially incorrect and the sentencing court relied on it in sentencing, Promotor would be entitled to a resentencing hearing. However, Promotor's case does not meet this standard because, as the Wisconsin Court of Appeals noted, the trial court did not rely on the figure. The court found that "[b]ased on the [trial] court's comments at sentencing and in response to [Promotor's post-conviction] motion, we are satisfied that the sentence would have been the same even if the court had originally been given a lower figure for the number of beers Promotor consumed."

We do not think it was unreasonable for the Wisconsin Court of Appeals to conclude that the trial court did not rely on the figure. It is true that the judge mentioned the 23-beer figure twice during sentencing. However, these mentions came but twice over the course of 26 pages of sentencing hearing transcript, in which the court thoroughly explained its considerations in determining Promotor's sentence: his decision to drink irresponsibly in spite of prior "warning signs", the erratic and dangerous way in which he drove, his seriously impaired condition that caused him to forget significant

portions of the evening, and the tragic result of his actions. And the court did state that it did not rely on the figure in its order denying Promotor's motion for post-conviction relief, which, although not dispositive, *see, e.g., United States v. Montoya*, 891 F.2d 1273, 1280-81 (7th Cir. 1989), also supports the conclusion of the appellate court.

Even if Promotor had not procedurally defaulted his claim of inaccuracy, the Wisconsin Court of Appeals' finding that the trial court did not rely on the information was not unreasonable. The district court properly denied his request for a writ of habeas corpus.

### C. Certificate of Appealability was Properly Denied Due to Default

Before a habeas petitioner may appeal to this court, the district court must consider whether to grant the petitioner a Certificate of Appealability ("COA"). 28 U.S.C. § 2253 (c); Fed. R. App. P. 22(b). The district court may issue a COA only if the applicant has made a substantial showing of the denial of a constitutional right. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). Promotor requested a COA on his ineffective assistance of counsel claims, which was denied. He asks that we expand the COA to address these claims.

The district court denied Promotor's COA because it found that he defaulted this claim by failing to fully and fairly present it to the Wisconsin Supreme Court. Indeed, Promotor failed to make any specific argument on the topic, and instead simply attached the Wisconsin Court

of Appeals' decision discussing ineffective assistance of counsel. The district court could have resurrected Promotor's procedurally defaulted claim if it found cause and prejudice. But the court did not so find, and held that "Promotor does not establish that application of the procedural default exception is warranted and this court's finding of procedural default is not reasonably debatable." *Promotor v. Pollard*, No. 07-CV-363, 2009 WL 1373935, at *4 (E.D. Wis. May 15, 2009).

We agree with the district court. To obtain federal habeas review, a state prisoner must first submit his claims through state review. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). To satisfy this requirement, Promotor must have fairly presented the substance of his claims to the state courts by articulating both the operative facts and applicable law that entitles him to relief. *Id.* Appending a prior court's decision without developing an independent position does not allow meaningful review of the substance of the claims. Promotor's decision to even attempt this strategy is puzzling since at the state appellate level he lost his ineffective assistance of counsel claim on the merits. And because Promotor was not proceeding *pro se,* this decision is inexcusable.

We decline to expand Promotor's COA.

### III.  CONCLUSION

The decision of the district court is AFFIRMED.