In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1891

DALE J. ATKINS,

*Petitioner-Appellant*,

*v.*

MICHAEL ZENK, Superintendent,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:10-cv-85-JVB—**Joseph S. Van Bokkelen**, *Judge.*

ARGUED NOVEMBER 29, 2011—DECIDED JANUARY 31, 2012

Before POSNER and KANNE, *Circuit Judges,* and PRATT, *District Judge.*[*]

PRATT, *District Judge.* Dale J. Atkins was convicted by a jury of attempted murder, criminal confinement, domestic battery, and invasion of privacy and sentenced to

---

[*] The Honorable Tanya Walton Pratt, District Judge for the United States District Court for the Southern District of Indiana, is sitting by designation.

51 years in prison. Atkins filed a post-conviction relief petition in Indiana state court, but obtained no relief. He then filed a federal habeas corpus petition under 28 U.S.C. § 2254, claiming that he was deprived of his Sixth Amendment right to effective assistance of trial counsel. The district court denied the petition, but granted a certificate of appealability. Atkins appealed, and we affirm.

## I. Background

### A. Facts

In 2003, Atkins married Yvonne Atkins ("Yvonne"). Some time later (it is unclear when), they began living apart, and the relationship soon degenerated into a cycle of violence. On January 26, 2004, Atkins stood at the door of Yvonne's home with a butter knife in one hand and a butcher knife in the other. Atkins fled when Yvonne's brother-in-law answered the door. On February 27, 2004, Atkins attacked Yvonne, was arrested, and pled guilty to domestic battery. On April 26, 2004, Yvonne sought and received a protective order, which was served on Atkins on April 29, 2004. The protective order instructed Atkins to stay away from Yvonne and gave her exclusive possession of the home.

Unfortunately, the protective order had little deterrent effect. Three days later, on May 2, 2004, Yvonne attended a neighbor's cookout. When she returned home after 8:00 p.m., she locked the door and called her neighbor to say that she had arrived home safely. Yvonne also

called her nephew, asked him to stay the night, and unlocked the door so he could let himself into the home. This practice had become routine, given Atkins's increasingly volatile behavior.

Yvonne soon heard a sound at the door, which turned out to be Atkins. Atkins stated that he wanted a drink, proceeded to the kitchen, and opened the refrigerator. Yvonne screamed at him to leave and then attempted to exit the home. Atkins pulled Yvonne towards him, put a knife against her neck, and cut her. He subsequently held her against a doorway, stated "I'm tired of this shit, bitch," and stabbed her approximately ten times. One of the stab wounds was less than one inch from Yvonne's heart, causing blood to spurt from her chest every time her heart beat. After Atkins fled the residence, Yvonne ran to her front porch, where she yelled for help. Thankfully, Yvonne's neighbors responded to her cries and assisted her until medical personnel arrived. During this time, Yvonne told her neighbors that Atkins had stabbed her. Yvonne was treated for internal injuries, including a collapsed lung and a stab wound to the spleen. Atkins fled Indiana and was ultimately apprehended in Georgia.

The State charged Atkins with attempted murder, criminal confinement, domestic battery, and invasion of privacy. Atkins was represented by attorney Todd Ess. Prior to trial, Ess met with Atkins four or five times to discuss trial strategy. Ess also filed a motion in limine concerning a telephone call that Atkins had made to Yvonne after the attack, reviewed discovery, formulated

a trial strategy, deposed Yvonne, and investigated ways to impeach Yvonne's credibility. From the outset of the attorney-client relationship, Atkins maintained that he was not at Yvonne's home during the stabbing, although he had occasionally equivocated on this point.

Based on Atkins's claim that he was not present at the home and the fact that Atkins was apprehended in Georgia, Ess prepared to forge an alibi/misidentification defense. On the day before trial, however, Atkins admitted to Ess that he had, in fact, stabbed Yvonne. But Atkins insisted that the stabbing was an accident that occurred during mutual combat, and that he had not intended to kill Yvonne.

In the wake of this revelation, Ess asked Atkins if he wanted to proceed using an accident defense or a misidentification defense. Ess advised Atkins that the best defense was for Atkins to testify as to how the incident occurred, that there was mutual combat, and to his state of mind during the incident. This way, Ess could seek a lesser-included offense instruction, thus allowing Ess to argue that Atkins was not guilty of attempted murder, which requires "specific intent to kill." *See Osborne v. State*, 754 N.E.2d 916, 924 (Ind. 2001); Ind. Code § 35-41-5-1. Atkins resisted, telling Ess that he would not testify; that he did not want to answer questions about the incident or his relationship with Yvonne; and that, if he did testify, he would not tell the jury about using cocaine the night of the incident (even though he had done so). Stuck in a strategic quandary, Ess contemplated other defenses based on lack of

intent, but decided to abandon them in light of Atkins's decision to exercise his right not to testify. Further, Atkins informed Ess that he wanted to pursue the "all or nothing" approach (i.e., the alibi/misidentification defense). Ess complied with Atkins's request.

During opening statements, Ess falsely stated to the jury that Atkins "went to Georgia and that's where he was when this occurred[.]" In a similar fashion, he stated that police did not find Atkins at the scene "[b]ecause he was in Georgia." Nonetheless, despite raising the specter of an alibi, Ess did not file the statutorily-required notice of alibi, *see* Ind. Code § 35-36-4-1; nor did he tender a jury instruction concerning an alibi defense.

The defense rested after the State presented its case-in-chief. During its closing argument, the State highlighted that the defense had not introduced any evidence that Atkins was actually in Georgia during the stabbing. In Ess's closing argument, he emphasized that the State's evidence was confusing, incomplete, and convenient for the victim. Ess argued that, in total, the holes in the evidence added up to reasonable doubt. The jury did not buy Atkins's defense, finding him guilty on all counts. Subsequently, the trial judge sentenced Atkins to an aggregate prison term of 51 years. At sentencing, the trial judge stated, "Mr. Ess did a good job for you, Mr. Atkins. He was working uphill but, as with your attitude towards Ms. Atkins, you don't seem to appreciate those who are trying to help you or do better for you[.]"

**B.  Post-trial Proceedings**

After his conviction, Atkins filed a direct appeal, claiming that the evidence was insufficient to convict him and that the trial court improperly weighed sentencing factors. In an unpublished opinion, the Indiana Court of Appeals affirmed. *Atkins v. State*, 49A05-0506-CR-00339 (Ind. Ct. App. Jan. 18, 2006).

On November 30, 2006, Atkins filed a petition for post-conviction relief, claiming that Ess had provided ineffective assistance of counsel by pursuing an "irrational alibi defense" that was based on a known lie. The trial court held an evidentiary hearing, where both Atkins and Ess testified. There, Atkins admitted that he "stuck" Yvonne purposely, and, although he did not intend to kill her, he knew what he was doing. Specifically, Atkins testified: "I stabbed her in front of her breast and I took it to the left a little bit, just thinking that I would injure her breast and I left, and that was the only injury that I purposely done."

Following the hearing, the trial court, in a thorough 18-page order, denied Atkins's petition. Specifically, the trial court addressed both prongs of the test for ineffective assistance of counsel: deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). Atkins appealed, again claiming that Ess provided ineffective assistance by pursing the alibi/misidentification defense. In an unpublished decision, the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Atkins v. State,* 49A04-0903-PC-169 (Ind. Ct. App. Oct. 20, 2009). In doing so, the appellate court only ad-

dressed the deficient performance prong of the *Strickland* test, ruling that "[c]ounsel has the discretion to determine what strategy is best under the circumstances . . . . It is not for us to speculate as to what may or may not have been advantageous trial strategy." Following this decision, the Indiana Supreme Court denied review.

Atkins then petitioned the district court for a writ of habeas corpus based on his ineffective assistance of counsel argument. The district court denied the petition, but granted a certificate of appealability. *Atkins v. Superintendent*, 3:10-cv-085-JVB, 2011 WL 971169 (N.D. Ind. Mar. 17, 2011). Atkins appealed. Additional facts are added below as needed.

## II. Analysis

On appeal, Atkins argues that his "right to effective assistance of counsel was violated when counsel knowingly raised a false alibi defense during opening statements," even though counsel "had no witnesses or evidence to support it." According to Atkins, Ess's performance was so deficient that it prejudiced his defense. In that same vein, Atkins argues that the Indiana state courts unreasonably applied federal law when denying his request for post-conviction relief.

## A. Standard of Review

When conducting a habeas review, "a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citations omitted). "In an appeal from a ruling on a petition for habeas relief, we review the district court's findings of fact for clear error and its rulings on issues of law *de novo.*" *Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001).

When a state court has ruled on the merits of a habeas claim, our review is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 783-84, 178 L.Ed.2d 624 (2011). Under AEDPA, we may grant relief only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Plainly stated, these are demanding standards. This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard "seriously and produce[d] an answer within the range of defensible positions." *Mendiola v. Schomig*, 224 F.3d 589, 591-92 (7th Cir. 2000); *see also Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006) ("[A] state court's application of federal constitutional law will be upheld if it is at least minimally consistent with the facts and circumstances of the case.") (citation and internal quotations omitted); *Harrington*,

131 S.Ct. at 788 ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).").

When "no state court has squarely addressed the merits" of a habeas claim, however, we review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243. Under this "more generous standard," *George v. Smith*, 586 F.3d 479, 484 (7th Cir. 2009), "we review the petitioner's constitutional claim with deference to the state court, but ultimately *de novo*." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011) (citations and internal quotations omitted). That being said, "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 131 S.Ct. at 788.

Here, the Indiana state courts analyzed both *Strickland* prongs. The trial court addressed both deficient performance and prejudice, while the appellate court limited its analysis to deficient performance. Because both prongs have been addressed by Indiana state courts, in one form or another, the deferential standard of review set out in § 2254(d) applies to both. *See* 28 U.S.C. § 2254(d) (deferential standard of review applies to "any claim that was adjudicated on the merits in State court proceedings"); *cf. Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("[O]ur review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."). We now turn to the merits of Atkins's ineffective assistance of counsel argument.

**B. Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, Atkins must meet both the deficient performance prong and the prejudice prong articulated in *Strickland*, 466 U.S. 668. In other words, Atkins must show that Ess performed in such a deficient manner that it deprived him of his guaranteed Sixth Amendment right to counsel, thus prejudicing his defense to the point that the result of the trial was rendered unreliable. *Id*. at 687.

With respect to deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. This analysis is based on "prevailing professional norms." *Id*. at 688. Importantly, "[j]udicial scrutiny of counsel's performance must be highly deferential," indulging a "strong presumption" of effectiveness to combat "the distorting effects of hindsight." *Id*. at 689.

On this point, the Indiana Court of Appeals concluded that counsel's decisions were strategic in nature and reasonable under the circumstances, holding that: "Ess's decision to pursue the misidentification defense is a strategic decision that we will not second-guess." Atkins counters that even if Ess's decision to knowingly lie to a jury while pursuing an alibi/misidentification defense falls within the realm of "strategy," it still was not "reasonable" under *Strickland*. According to Atkins, the unreasonableness of Ess's decision is bolstered by his failure to file a statutorily-required notice of alibi and his failure to tender an alibi-related jury instruction.

Indeed, "a number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where . . . a defendant's trial counsel fails to file a timely alibi notice[.]" *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases). In sum, Atkins argues that the defense strategy was so ill-conceived and halfhearted that it "totally gutted defense counsel's credibility with the jury" and rendered Ess's counsel constitutionally deficient.

Here, however, it is important to remain cognizant that Ess's performance, *viewed as a whole*, is what matters. *See Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (court must consider reasonableness of counsel's conduct "in the context of the case as a whole"). And although the portions of Ess's opening statement about Georgia may have been inappropriate and misguided, we cannot conclude that the Indiana courts applied *Strickland* in an unreasonable fashion, particularly given the strong presumption that counsel's performance was effective. *Strickland*, 466 U.S. at 689.

First, we agree with the Indiana Court of Appeals that counsel's decision was a reasonable strategic decision, and therefore not subject to Monday-morning quarterbacking. *See Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) ("It is well established that our scrutiny of counsel's trial strategy is to be deferential and that we do not second guess the reasonable tactical decisions of counsel in assessing whether his performance was deficient."). As a practical matter, Ess's strategy options were exceedingly limited. He advised Atkins that the

"best" strategy was to argue that he should be acquitted of attempted murder because he lacked intent to kill. However, this option was, in Ess's view, entirely contingent upon Atkins's testimony. So when Atkins chose instead to exercise his right not to testify, Ess felt that this door closed, testifying: "I just . . . didn't see any witness giving me the evidence that I needed to get those instructions in, because they have to be supported by the record." Therefore, Ess made a calculated decision to comply with his client's desires and pursue an "all or nothing" approach in the form of an alibi/misidentification defense. Undoubtedly, Ess's defense strategy created a steep hill to climb. But given the circumstances at hand, we are easily persuaded that Ess's decision was a reasonable one.

Second, it is worth noting that although Ess raised alibi issues during his opening statements, the crux of his trial strategy related to misidentification: that is, the circumstances surrounding Yvonne's identification of Atkins created reasonable doubt. And on this issue, the evidence shows that Ess performed his duties adequately. Prior to trial, Ess took Yvonne's deposition, reviewed discovery, conceived ways to impeach Yvonne, filed a motion in limine concerning a telephone call Atkins had made to Yvonne after the attack, and formulated a trial strategy. At trial, Ess challenged Yvonne's identification of Atkins as her assailant directly and indirectly in a variety of ways. For instance, the evidence showed that Yvonne was the only person who saw Atkins, that she had consumed five beers on the night of the incident, that her lights

were off during the incident, that she had prior alterca-tions with Atkins, and that she had a history of gen-eralized anxiety disorder.

Viewing Ess's performance as a whole, we find that the state courts did not apply *Strickland* in an unrea-sonable fashion. All in all, Ess was dealt a tough hand by a difficult client. Facing an uphill battle from the start, Ess did what he could to maximize his client's chances of acquittal.

Finally, with respect to deficient performance, we must pause to note that Ess's decision to lie to the jury about Atkins's whereabouts during opening statements, while troubling, does not meaningfully affect the Court's analysis. *See Brewer v. Aiken*, 935 F.2d 850, 859-60 (7th Cir. 1991) (refusing to find ineffective assistance of counsel where counsel suborned perjury about the defendant's alibi). As Atkins's brief acknowl-edges, the rule against presenting false evidence to the jury is to protect the integrity of the truth-finding function of courts—not to protect the rights owed to the defendant. *See Nix v. Whiteside*, 475 U.S. 157, 174 (1986) (attorney's responsibility to prevent perjured testimony is a duty to the court). Although opening statements are not evidence, *see United States v. DeSilva*, 505 F.3d 711, 718 (7th Cir. 2007), common sense suggests that this same reasoning applies with equal force to the present circumstances.

Because we have determined that Ess's counsel was not constitutionally deficient, a prejudice analysis is more academic than pragmatic. Moreover, courts need

not address both prongs of *Strickland*. In fact, *Strickland* itself advised courts that "[i]f it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. Here, we cannot say with certitude that the prejudice prong is the *easier* analysis. What we can say, however, is that an analysis of *Strickland*'s second prong leads to the same result: the denial of Atkins's petition.

On appeal, Atkins contends that "[t]here is significant evidence [that he] would have been convicted of a lesser included offense but for counsel's acts and omissions." Atkins's entire argument boils down to the fact that Yvonne's stab wounds were not particularly deep. Therefore, a jury could have reasoned that Atkins lacked the requisite intent to kill. There are, however, a host of problems with this argument, which is little more than an invitation for the Court to make speculation-fueled inferential leaps. Most notably, Atkins readily admits that he "stuck" Yvonne, and ten stab wounds—one that was less than one inch from her heart and another that cut her spleen—are damning evidence supporting an intent to kill. Moreover, the fact remains that Atkins chose not to testify, thus making an intent-based defense essentially untenable. Finally, Atkins's argument ignores the fact that the jury was free to consider the location and depth of the stab wounds and, from there, infer that Atkins lacked the requisite intent for an attempted murder charge. On this point, it is worth highlighting that the jury was instructed on lesser-included offenses. Overall, the record establishes that Atkins cannot show a "reasonable probability"

that, but for Ess's alleged errors, "the result of the proceedings would have been different." *Id*. at 695.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.