**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 9, 2015
Decided October 15, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-1084

| | |
|---|---|
| MARK M. BENSON, <br> *Petitioner-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 14 C 249 |
| TIMOTHY DOUMA, Warden, <br> *Respondent-Appellee.* | William C. Griesbach, <br> *Chief Judge.* |

**O R D E R**

Mark Benson petitions for habeas corpus relief from his state court sentence. He claims that the sentencing court relied on inaccurate information in a toxicology report and that he received ineffective assistance of counsel because his attorney did not object to or correct the allegedly inaccurate information in the report. Because the district court was correct to find that Benson was not prejudiced by either the procedural default of his due process claim, or his counsel's performance, we affirm the judgment of the district court.

## I. Background

Mark Benson plowed his vehicle into the rear of Jennifer Bukosky's stopped car at full speed, without touching his brakes. He killed Bukosky, her unborn child, and her ten-year-old daughter, injured her son, and seriously injured her daughter's friend. Benson was an orthopedic surgeon who had three prior convictions for obtaining prescription drugs by fraud and three convictions for driving while intoxicated. At the time of the crash, Benson was driving on a revoked license. He was due to report for a 75-day sentence in county jail for his last conviction and was only free to arrange his affairs. He was expressly told not to drive.

Benson pleaded no contest to three counts of homicide, one count of causing great bodily harm, and one count of causing injury. The intoxicated use of a motor vehicle was an element of each crime. At the time of the crash, Benson had several prescription drugs in his system. He admitted to taking Xanax (an anti-anxiety medication), Ambien (a sleep aid), and Percocet (a painkiller) prior to the crash.

At sentencing, Benson submitted a report from his pharmacology expert, Dr. Francis Gengo. At issue in this case is the information in the report concerning Ambien, otherwise known by the generic name zolpidem. In the report, Dr. Gengo discussed the level of zolpidem in Benson's blood after the crash:

> The concentrations of zolpidem measured in Dr. Benson's blood shortly after the crash are much higher than those that would be expected if he had taken therapeutic doses of zolpidem at bedtime the night before. These concentrations of 253 ng/ml are much higher than therapeutic and zolpidem has a very short half life. This indicates that Dr. Benson consumed a daytime dose of zolpidem both before and possibly after the crash. I am not able to rule out that zolpidem could have produced significant cognitive impairment in Dr. Benson at the time of the crash.

Dist. Doc. 11-5 at 24. Benson admitted to taking a large dose of Ambien in the morning before the crash. Yet, he claimed that the level in his blood was a result of him taking a dose directly after the accident to prevent a panic attack.

The sentencing court found that Benson's intoxication was an aggravating factor. It stated that it did not rely on the state's expert reports because they provided only general statements. The court said that only Dr. Gengo's report had any real information about the degree of intoxication. It ruled out the other medications as being major contributors and said that the Ambien was "the culprit" because the "medication was present at much higher than therapeutic levels." Supp. App. at 164, 165. However, despite these statements, the court immediately acknowledged that "there is some lack of perfect clarity as to when that therapeutic level was reached or the above therapeutic level, because it is reported that Mr. Benson took Ambien both before and after the time of the crash that killed people." *Id*. at 165. The court said, "All in all, no one can, I can't, no expert has told me, any way to quantify the degree of Mr. Benson's impairment at the time of the collision." *Id*. It acknowledged that witnesses had said that Benson did not seem "wasted," but "[t]hat doesn't mean he wasn't impaired." *Id*. at 165–66. The sentencing court then considered "other factors … to try and address the level of inability to properly control his vehicle." *Id*. The court considered his hands-free phone, and his history of back pain and health problems. After considering the other factors it said, "So this certainly is a serious level of being under the influence, of being incapacitated." *Id*. But this was not enough information "to conclude that it was highly aggravated," such as cases where persons "hit the road after … they take multiple dose[s] of opiate, medicine, and otherwise." *Id*. After noting that speed was not a factor, the court settled on what it considered to be the true aggravating factor:

> But, the aggravating factor here is that he didn't brake, not at all, not a little bit. And the car that he hit was stopped, had been stopped at a red light, hadn't gotten going yet, and it was right in front of him. … And a stopped car, in broad daylight, at an intersection where there is a red and green stop and go light, is something you have to notice. You should notice. You always notice. It is highly aggravating that he would plow into that vehicle in this manner.

> The seriousness here, trying to take into account all of these, is above intermediate. It is aggravated to a degree for the various factors I have mentioned. To put it in the vernacular, it is a shocking and frightening collision with permanent consequences.

*Id*. at 167–68. The state court sentenced Benson to 30 years of confinement with 35 years of extended supervision.

Benson moved for post-conviction relief, specifically for resentencing, on the grounds that 1) the sentencing court relied on inaccurate information in Dr. Gengo's report in violation of his due process rights, and 2) he was provided ineffective assistance of counsel when his counsel failed to object to or correct the inaccurate Ambien-related information in Dr. Gengo's report. Benson submitted an affidavit from Dr. Gengo in which Dr. Gengo asserted that upon reexamination of his report he "discovered a lack of clarity" regarding whether the level of Ambien in Benson's blood was much higher than the therapeutic level. *Id*. at 141. According to Dr. Gengo, the report could be "misinterpreted" to "give the impression that Dr. Benson took a dose of Ambien well in excess of [the proper amount]." *Id*. Dr. Gengo stated that he meant to say that the level of Ambien in Benson's blood was greater than the level would have been had Benson taken a dose the night before, but within the therapeutic range had Benson taken a dose shortly before or after the accident. Dr. Gengo concluded that: "I cannot say whether zolpidem may have caused him significant cognitive impairment at the time of the crash." *Id*. Benson also submitted an affidavit from his attorney who stated that he thought something was wrong with the report but neglected to say anything. *Id*. at 138.

The same state judge who sentenced Benson denied his post-conviction motion for resentencing. He ruled that he had not relied upon Dr. Gengo's report. Instead, he had relied upon the finding that Benson was intoxicated by virtue of his no-contest pleas to "multiple offenses of homicide by intoxicated use of a vehicle" and "the facts and circumstances of rear ending somebody without hitting the brakes when they're right in front of you in clear view." *Id*. at 124, 127. The state judge also ruled that Dr. Gengo's report did not contain inaccurate information, but that, as Dr. Gengo stated, the "original report could have been misunderstood, or could have left a false impression." *Id*. at 128. According to the state judge, at sentencing he was aware of the report's deficiency and so "explicitly sa[id] it didn't have a particular factual understanding of what happened as far as the effect of the drugs on the defendant's system at the time." *Id*. at 128–29. The state judge also ruled that Benson's counsel's performance was not deficient because his counsel could not have realized the report's potential to be misunderstood, just as Dr. Gengo did not at first realize it. Furthermore, the state judge ruled that Benson's counsel's alleged deficient performance had no impact on the proceeding because it would not have turned out differently had his counsel clarified the report's potential for misunderstanding. The court did not rely on the information, but upon "how he

committed the crash, and the fact that he had been found intoxicated as defined by the statute, which he was convicted of repeatedly." *Id*. at 130.

Benson appealed the denial of his post-conviction motion, but the Wisconsin Court of Appeals held that Benson forfeited his due process claim since he submitted the report himself and failed to correct or object to the Ambien-related information. *State v. Benson*, 822 N.W.2d 484, 488 (Wis. Ct. App. 2012). It also held that his ineffective assistance of counsel claim failed because Benson was not prejudiced by his counsel's submission of the report, and failure to correct or clarify the report. *Id*. at 491.

After the Wisconsin Supreme Court denied review, Benson petitioned the district court for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. The district court relied on our decision in *Promotor v. Pollard*, 628 F.3d 878 (7th Cir. 2010), to conclude that Benson had procedurally defaulted on his due process claim. Specifically, it held that the Wisconsin Court of Appeals' holding that Benson had forfeited his claim by failing to object was an adequate and independent state law ground precluding relief. To overcome his procedural default, Benson argued that he showed both cause and prejudice in accordance with *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The district court found that Benson showed cause because if counsel could not be faulted for failing to see the problems with the report then neither should Benson. Nevertheless, the district court found that Benson failed to show prejudice because he could not show that the sentencing court relied on the information when it imposed his sentence. For this same reason, the district court also found that Benson could not show the prejudice required under *Strickland v. Washington*, 466 U.S. 668 (1984), for his ineffective assistance of counsel claim. Benson appeals.

## II. Analysis

When reviewing a district court's judgment on habeas corpus relief, we review its legal conclusions *de novo* and its findings of fact for clear error. *Promotor*, 628 F.3d at 885. Furthermore, the AEDPA provides that habeas corpus relief may only be granted if the state court decision, on the merits, was 1) "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This deferential standard applies "when a state court makes the basis for its decision clear," and "only to those issues the state court explicitly addressed." *Quintana v. Chandler*, 723

F.3d 849, 853 (7th Cir. 2013). If the state court did not address the merits of an issue, we review it *de novo*. *Atkins v. Zenk*, 667 F.3d 939, 944 (7th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

### A. Benson procedurally defaulted on his due process claim.

The Wisconsin Court of Appeals held that Benson forfeited his due process claim by failing to correct or object to the Ambien-related information at sentencing. *Benson*, 822 N.W.2d at 488. The district court found that Wisconsin's forfeiture-by-failure-to-object rule was an adequate and independent state law ground on which to find that Benson had procedurally defaulted his due process claim. *See Promotor*, 628 F.3d at 885. A state law ground is independent if it was actually relied upon and adequate if "it is a firmly established and regularly followed state practice at the time it is applied." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Benson argues that the district court erred in finding that the rule was an adequate and independent state law ground because the rule was improperly applied to him. According to Benson, Wisconsin's forfeiture-by-failure-to-object rule does not apply to a person like him who could not have known to object.[1] In other words, Benson argues that the rule is not adequate because the improper manner in which it was applied to him was not firmly established and regularly followed. For this argument, he relies on *State v. Thompson*, 818 N.W.2d 904 (Wis. 2012).

Benson's reliance on *Thompson* is misplaced. In *Thompson*, the Wisconsin Supreme Court addressed the rule under Wis. Stat. § 971.31 that an objection to the sufficiency of a complaint must be made before trial or the preliminary examination or be deemed waived. Although the state argued that the defendant forfeited his claim by failing to comply with § 971.31, the court declined to extend the rule to the defendant. First, the word "waiver" in § 971.31 implied an understanding of the possible objection, but the situation presented to the court was one "in which the entire courtroom was operating under a mistaken understanding of the law" so that "the defendant and his counsel were given misleading information" regarding the applicability of a 25-year mandatory

---

[1] To establish that his counsel could not have known to object, Benson points to the post-conviction court's ruling that an ordinary criminal defense lawyer should not be expected to spot the potentially misleading but not inaccurate statement in Dr. Gengo's report. Supp. App. at 130. He does not make this assertion himself, however, because he submitted an affidavit from his counsel in support of his ineffective assistance of counsel claim that contradicts the court's finding. In the affidavit, Benson's counsel stated that he noticed that the therapeutic range for zolpidem listed in the report looked wrong to him, but he failed to do anything about it. *Id*. at 138.

minimum sentence. *Thompson*, 818 N.W.2d at 919. Second, the Wisconsin Supreme Court also noted that § 971.31 may not, by its terms, apply to Thompson because he was "really complaining about more than the 'insufficiency of the complaint' or 'information,' which are specifically addressed in the statute." *Id*. at 919. Whereas here, in holding that Benson forfeited his due process claim, the Wisconsin Court of Appeals instead relied on its firmly established and regularly followed practice that "[w]here the facts stated in a presentence report are not challenged or disputed by the defendant at the time of sentencing, the sentencing judge may appropriately consider them." *State v. Mosley*, 547 N.W.2d 806, 810 (Wis. Ct. App. 1996). The district court, therefore, did not err by concluding that Benson procedurally defaulted on his due process claim.

> ### B.   Benson cannot show prejudice for either the procedural default of his due process claim or his ineffective assistance of counsel claim.

Both Benson's due process claim and his ineffective assistance of counsel claim fail because he cannot show prejudice. To overcome the procedural default of his due process claim, Benson must show cause and prejudice for the default or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *See Promotor*, 628 F.3d at 885. Benson does not argue a fundamental miscarriage of justice, but attempts to show cause and prejudice. To show cause for his default, Benson relies on his claim of ineffective assistance of counsel. *See Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). To show prejudice for his default, he must show "that the violation of [his] federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Promotor*, 628 F.3d at 887 (internal quotation marks omitted). For his ineffective assistance of counsel claim, Benson must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. To show prejudice for his ineffective assistance of counsel claim, Benson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The issue of cause aside, because the sentencing judge did not rely on the Ambien-related information in the report, Benson cannot show either that he was prejudiced by his procedural default or that he was prejudiced by his counsel's performance. To establish that Benson was in fact impaired, the sentencing court relied on his no-contest plea, which under Wisconsin law "constitutes an implied confession of guilt for the purposes of the case to support a judgment of conviction and in that respect is equivalent to a plea of guilty." *Lee v. Wisc. State Bd. of Dental Exam'rs*, 139 N.W.2d 61, 63

(Wis. 1966). Thus, by pleading no contest to three counts of homicide by intoxicated use of a motor vehicle, Benson admitted to being materially impaired. *See* Wis. Stat. §§ 940.09(1)(a), 939.22(42). To determine that Benson's impairment was an aggravating factor, the sentencing court clearly relied on the severity of Benson's terrible driving, "that he didn't brake, not at all, not a little bit." Supp. App. at 167. The sentencing judge did not rely on Dr. Gengo's report because "no expert [] told [him] any way to quantify the degree of Mr. Benson's impairment at the time of the collision." *Id*. at 166. Put simply, Benson cannot show that allegedly inaccurate information "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Promotor*, 628 F.3d at 887 (internal quotation marks omitted). Neither can he show "that there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## III. Conclusion

Therefore, because the district court was correct to find that Benson was not prejudiced by the procedural default of his due process claim, or his counsel's performance, the judgment of the district court is AFFIRMED.