STATE of Wisconsin,
Plaintiff-Appellant,

v.

Harry THOMPSON,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2009AP1505–CR. Oral argument October 5, 2011.
—Decided July 12, 2012.*

2012 WI 90

(Also reported in 818 N.W.2d 904.)

674

675

676

For the defendant-respondent-petitioner there were briefs filed by *J.P. La Chapelle* and *Brazeau, Wefel, Kryshak and Nettesheim, LLP,* Wisconsin Rapids, and oral argument by *J.P. La Chapelle.*

For the plaintiff-appellant the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals, *State v. Thompson,* No. 2009AP1505–CR, unpublished slip op. (Wis. Ct. App. Nov. 24, 2010), reversing a circuit court order granting Harry Thompson (Thompson) a new trial after a jury found him guilty of one count of first-degree sexual assault of a child under the age of 13.

¶ 2. The predicament presented by this case involves the following facts. Thompson was charged with two counts of first-degree sexual assault of a child under the age of thirteen without great bodily harm, contrary to Wis. Stat. § 948.02(1)(b). The criminal complaint stated that each count was "a Class B Felony." Each count of the complaint cited Wis. Stat. § 939.50(3)(b),[1] which provided that the penalty "For a Class B felony [is] imprisonment not to exceed 60

---

[1] At issue in this case are statutory changes that occurred during the 2005 legislative session. Thompson was charged with crimes that occurred in September 2007. Thus, the version of

years." Each count stated that "upon conviction ['the above-named defendant'] may be sentenced to a term of imprisonment not to exceed sixty (60) years."

¶ 3. From the filing of the complaint on September 26, 2007, until shortly before the date scheduled for Thompson's sentencing (November 6, 2008), the State (represented by the Wood County District Attorney's office),[2] Thompson's defense attorney,[3] the Wood County Circuit Court,[4] and the defendant were not aware that a violation of Wis. Stat. § 948.02(1)(b) arguably was subject to Wis. Stat. § 939.616(1), which provided a mandatory minimum sentence as follows:

> *Mandatory minimum sentence for child sex offenses.* (1) If a person is convicted of a violation of s. 948.02(1)(b) or (c) or 948.025(1)(a), the court shall impose a bifurcated sentence under s. 973.01. *The term of confinement in prison portion of the bifurcated sentence shall be at least 25 years.* Otherwise the penalties for the crime apply, subject to any applicable penalty enhancement.

(Emphasis added).

¶ 4. Stated differently, all principals in this case were unaware at the initial appearance; the prelimi-

---

the law that was in effect when the crimes were committed is contained in the 2005–06 version of the statutes. A detailed description of these statutory changes is found *infra.*

[2] Assistant District Attorney John P. Henkelmann handled the case. Henkelmann was appointed Wood County District Attorney in August 2009.

[3] Attorney Gary J. Kryshak represented Thompson through trial and post-conviction motions.

[4] Wood County Circuit Judge Gregory J. Potter presided at the initial appearance. Wood County Circuit Judge Edward F. Zappen, Jr., presided at the preliminary examination, arraignment, and jury trial. Judge Zappen also handled the post-trial proceedings.

nary examination; the arraignment; the discussions about a plea bargain *if there were any;* and the jury trial at which the defendant testified, that the defendant faced a possible mandatory minimum sentence of 25 years in prison on each of the two counts.

¶ 5. Thompson had been charged with placing his finger inside the vagina of a nine-year-old child on September 6, 2007, and doing it again on September 21. He was found guilty of only the first count. It wasn't until the preparation of a pre-sentence investigation (PSI) report following his conviction at trial that all the principals in the case learned that Thompson was subject to a mandatory minimum sentence of 25 years in prison.

¶ 6. The predicament, then, is whether the failure to inform the defendant of the mandatory minimum sentence purportedly attached to a conviction under Wis. Stat. § 948.02(1)(b) violates some right that the defendant may assert and, if so, what remedy, if any, follows from proof of that violation.

¶ 7. Thompson presents three issues for review:

> 1. Whether the failure to inform Thompson of the applicable mandatory minimum sentence of 25 years of incarceration prior to trial violated Thompson's constitutional due process rights.

> 2. Whether the complaint in this case was defective under Wis. Stat. § 970.02(1)(a) because it did not state the applicable mandatory minimum sentence, therefore entitling Thompson to a new trial.

> 3. Whether the court of appeals exceeded its authority and neglected to adhere to prior precedent when it decided issues of ineffective assistance of counsel.

¶ 8. We reach the following conclusions.

¶ 9. First, there are legitimate questions whether a mandatory minimum sentence of 25 years applies to Thompson in this case. However, we do not decide this issue because the issue has not been briefed and it is better practice not to decide issues that have not been fully briefed. The issue should be considered on remand.

¶ 10. Second, assuming but not deciding that the mandatory minimum sentence applies to Thompson, the failure to inform Thompson of the mandatory minimum sentence violated Wis. Stat. § 970.02(1)(a). Wisconsin Stat. § 970.02(1)(a) requires the judge who presides at an initial appearance to inform the defendant of the charge and furnish the defendant with a copy of the complaint "which *shall contain the possible penalties for the offenses* set forth therein." (Emphasis added). "In the case of a felony, the judge *shall* also inform the defendant of the penalties for the felony with which the defendant is charged." *Id.* (emphasis added). The court did not furnish the defendant with a complaint that contained one of "the possible penalties for the offense"—namely, the mandatory minimum penalty of 25 years in prison—and it did not adequately inform the defendant of the possible penalties. Assuming that Thompson is subject to a mandatory minimum penalty, these violations of Wis. Stat. § 970.02(1)(a) by the State and by the circuit court were not corrected at any point in the proceedings.

¶ 11. We conclude that this case must be remanded to the circuit court for a hearing to determine whether Thompson was prejudiced by the violations of Wis. Stat. § 970.02(1)(a). The prejudice determination must satisfy the traditional standard for overcoming harmless error, that is, there must be a reasonable probability that the error contributed to the outcome of the action or the proceeding at issue.

¶ 12. Third, assuming again but not deciding that the mandatory minimum sentence applies to Thompson, the failure of Thompson's defense attorney to discover this fact, inform Thompson of this fact, and incorporate this fact into his defense strategy, is likely to be assessed as deficient performance if Thompson should file an ineffective assistance of counsel claim. However, if Thompson were to make such a claim, he also would be required to establish prejudice from the deficient performance as the second prong of such a claim. *See State v. Domke,* 2011 WI 95, ¶ 34, 337 Wis. 2d 268, 805 N.W.2d 364. We remand this case to the circuit court, so that all facets of possible prejudice to the defendant may be examined at the same time if an ineffective assistance of counsel claim is made.

¶ 13. Consequently, we reverse the decision of the court of appeals and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. STANDARD OF REVIEW

■

¶ 14. This case presents constitutional questions regarding whether the defendant's due process rights were violated. We review determinations of these questions de novo. *State v. McGuire,* 2010 WI 91, ¶ 26, 328 Wis. 2d 289, 786 N.W.2d 227.

■

¶ 15. Additionally, this case presents several questions of statutory interpretation, which we review de novo. *State v. Dinkins,* 2012 WI 24, ¶ 28, 339 Wis. 2d 78, 810 N.W.2d 787.

## II. DISCUSSION

### A. Background

¶ 16. When the principals in this case learned from the PSI that Thompson was subject to a mandatory minimum sentence of 25 years, the Wood County Circuit Court, Edward F. Zappen, Jr., Judge, delayed sentencing.

¶ 17. The court briefly examined the statutory history of Wis. Stat. § 939.616 (the mandatory minimum penalty statute) and expressed concern whether Thompson's conviction was valid, or, if it was, what sentence should be applied. At this hearing, on November 6, 2008, the circuit court stated, "If we want to point any fingers, it has to be done with the sloppy legislation that was done that put this law in effect that went past all of us."

¶ 18. On January 15, 2009, Thompson moved for a new trial on the basis that he was denied his due process rights when "he was not adequately informed of the penalty of said crime prior to going to a jury trial."

¶ 19. On January 29, 2009, the court held a hearing on that motion.

¶ 20. At the hearing, the assistant district attorney explained that the legislature had passed two bills affecting the applicable statutes. He noted that the bills were signed on the same day and that the bills created "mutually inconsistent" laws. As a result, he asked that the defendant be sentenced without the mandatory minimum.

¶ 21. The circuit court disagreed, stating that "There is a mandatory 25 year minimum mandatory on this case, no ands, ifs and buts." "It is patently clear that the 25 year mandatory minimum penalty applies to a violation of 948.02(1)(b) as defined in 05 Act 437."

¶ 22. Based on this holding, the court determined that failure by the district attorney to allege the mandatory minimum sentence in the complaint, combined with Thompson's attorney's failure to inform Thompson of the penalty, was "a very clear violation of due process." The court did not sentence Thompson. Instead, it granted him a new trial. While the court noted that due process and ineffective assistance of counsel were both issues, the court grounded its new trial ruling on due process.

¶ 23. The court stated: "How can that be any different if a defendant is . . . deciding . . . to make an intelligent decision whether or not to go to trial or whether or not to perhaps take some other offer? And whether there was [an offer] here is beside the point. But without being notified as to what he's facing he's not in a position to make a decision whether or not to go to trial."

¶ 24. In the court's order for a new trial, the court included the following findings of fact:

1. That the defendant, Harry Thompson, was charged in a Criminal Complaint dated September 26, 2007, with two counts of first degree sexual assault of a child under the age of 13 without great bodily harm, contrary to Sections 948.02(1)(b) and 939.50(3)(b) of the Wisconsin Statutes. As a penalty, the Criminal Complaint indicated that it was a Class B felony, and upon conviction, he may be sentenced to a term of imprisonment not to exceed sixty (60) years.

. . . .

3. That no party made an objection to the penalty referred to in the Criminal Complaint/Information.

4. That it was only after the pre-sentence investigation was received, that the Court and counsel discov-

ered that the correct penalty included a minimal initial incarceration of 25 years per Wisconsin Statute Section [939.616].

5. That at no time was the defendant informed that he faced a [mandatory minimum] prison sentence of 25 years.

¶ 25. The State appealed. The court of appeals reversed the circuit court's order for a new trial. The court of appeals relied on cases stating that defendants have no right to plea bargain. *Thompson,* No. 2009AP1505–CR, unpublished slip op., ¶¶ 7–8. Therefore, the court determined that the lack of knowledge regarding a mandatory minimum sentence could not have interfered with Thompson's right to plea bargain because he did not have such a right. *Id.,* ¶ 13. Likewise, the court determined that "any defect in the complaint [under Wis. Stat. § 970.02(1)(a)] was not prejudicial"; therefore, he was not entitled to a new trial. *Id.,* ¶ 14. The court also discussed ineffective assistance of counsel, determining that the failure of Thompson's attorney to inform Thompson of the mandatory minimum sentence failed on the same grounds as his due process and statutory violation challenges— namely, that Thompson had no right to bargain in the first place. *Id.,* ¶ 20.

¶ 26. Thompson moved the court of appeals for reconsideration, claiming that the court prematurely decided the ineffective assistance of counsel claim, which was not decided by the circuit court nor appealed to the court of appeals. The court of appeals noted that the parties had referred to ineffective assistance of counsel in the court of appeals briefs and that the court decided the claim only insofar as it related to the issue of whether Thompson had a right to plea bargain. The court stated that Thompson could still bring an ineffec-

tive assistance of counsel claim if he could show deficient performance and prejudice, and the court declined to alter its opinion.

### B. Applicability of Mandatory Minimum Sentence to This Case

¶ 27. This case has been argued on the assumption that Thompson is subject to a mandatory minimum sentence of 25 years. This assumption may not be correct. The legislative history of the applicable statutes is so bizarre that it raises legitimate questions about whether the mandatory minimum sentence applies in this case.

¶ 28. Wisconsin Stat. § 948.02(1) (2003–04) provided:

> *Sexual assault of a child.* (1) First degree sexual assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony.

¶ 29. "Sexual contact" was defined in Wis. Stat. § 948.01(5) and "sexual intercourse" was defined in Wis. Stat. § 948.01(6). In 2003–04 there was *no* Wis. Stat. § 939.616 and *no* Wis. Stat. § 939.617.

¶ 30. The 2005 legislature passed 2005 Assembly Bill 784. This bill became 2005 Wisconsin Act 430. Among its provisions, Act 430 made several changes in the sexual assault statutes affecting children.

¶ 31. Act 430 created § 939.617 (mandatory minimum sentence for child sex offenses), which provided in part:

> (1) If a person is convicted of a violation of s. 948.02(1)(b) or (c) or 948.025(1)(a), the court shall impose a bifurcated sentence under s. 973.01. The term

685

of confinement in prison portion of the bifurcated sentence shall be at least 25 years. Otherwise the penalties for the crime apply, subject to any applicable penalty enhancement.

¶ 32. Act 430 renumbered § 948.02(1) to § 948.02(1)(b) and amended it to read:

(b) Whoever has sexual intercourse with a person who has not attained the age of 12 years is guilty of a Class B felony.

¶ 33. Act 430 created § 948.02(1)(e) to read:

(e) Whoever has sexual contact with a person who has not attained the age of 13 years is guilty of a Class B felony.

¶ 34. The effect of Act 430 was to create a section imposing a mandatory minimum penalty for sexual intercourse with a person who has not attained the age of 12 years.

¶ 35. The 2005 legislature also passed 2005 Senate Bill 629. This bill became 2005 Wisconsin Act 437. Act 437 became law exactly the same day as Act 430 but its numbering indicates that it became law after Act 430. Act 437 had no mandatory minimum provision, but it too renumbered and amended Wis. Stat. § 948.02(1). As a result of the Act 437 amendment, § 948.02 read in part:

(1) Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of one of the following:

. . . .

(b) If the sexual contact or sexual intercourse did not result in great bodily harm to the person, a Class B felony.

¶ 36. The effect of Act 437 was to create a different, *inconsistent* Wis. Stat. § 948.02(1)(b). This inconsistency was clearly identified by the Revisor of Statutes Bureau in the 2005–06 version of the statutes as follows:

> NOTE: Sub. (1) is affected by 2005 Wis. Acts 430 and 437. The 2 treatments are mutually inconsistent. Sub. (1) is shown as affected by the last enacted act, 2005 Wis. Act 437. As affected by 2005 Wis. Act 430, it reads:

[text of Act 430 provision].

¶ 37. The approval of Act 437, which amended the same statutory section that Act 430 had amended, raises the question whether both provisions existed—as fraternal twins—at the time Thompson was prosecuted.[5] Thompson was charged under the provision

---

[5] The legislature addressed the confusion created by Acts 430 and 437 by passing 2007 Wisconsin Act 80. That Act read in part:

SECTION 12. 948.02 (1) of the statutes, as affected by 2005 Wisconsin Acts 430 and 437, is repealed and recreated to read:

948.02 (1) FIRST DEGREE SEXUAL ASSAULT.

(am) Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years and causes great bodily harm to the person is guilty of a Class A felony.

(b) Whoever has sexual intercourse with a person who has not attained the age of 12 years is guilty of a Class B felony.

(c) Whoever has sexual intercourse with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony.

(d) Whoever has sexual contact with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony if the actor is at least 18 years of age when the sexual contact occurs.

(e) Whoever has sexual contact with a person who has not attained the age of 13 years is guilty of a Class B felony.

created by Act 437. An argument has been made in unrelated cases that two versions of § 948.02(1)(b) existed and that the mandatory minimum sentence in Wis. Stat. § 939.616(1) applied only to a charge under the version created by Act 430, not the version created by Act 437.

¶ 38. In *State v. Comas,* No. 2010AP2687–CR, unpublished slip op., ¶ 5 n.2 (Wis. Ct. App. Sept. 29, 2011), Judge Lundsten noted that

> [I]n a recent unpublished decision involving the same legislative acts, *State v. Thompson,* No. 2009AP1505–CR, unpublished slip Op. (Wis. Ct. App. Nov. 24, 2010), we explained that the parties agreed, for purposes of that appeal, that the mandatory minimum confinement provision applied to a charge under a different child sexual assault provision, Wis. Stat. § 948.02(1)(b) (2005–06). *See Thompson,* No. 2009AP1505–CR, ¶ 2 & n.2. It may be that the defendant in *Thompson* could have raised the same or similar arguments that Comas makes in this case.

¶ 39. In *State v. LaGrew,* No. 2010AP1761–CR, unpublished slip op. (Wis. Ct. App. June 29, 2011), the State argued in its brief to the court of appeals that

> Because Act 430 created *both* § 939.616(1) *and* § 948.02(1)(b) and (c), it is clear that the subsection (b) and (c) referred to in § 939.616(1) are the subsection (b) and (c) created by Act 430, not the subsection (b) created by Act 437 and *the subsection (c) not mentioned in Act 437. See* 2005 WI Act 430, §§ 1, 3, 4. . . . If the [Revisor of Statutes Bureau] had renumbered the "reference numbers" in 939.616(1) as it was authorized to, any confusion on this matter would have been eliminated.

(Emphasis in original.)

688

¶ 40. Inasmuch as the issue of whether the mandatory minimum sentence applies to Thompson, who was charged under the language created by Act 437, was not briefed or argued, we do not decide the issue here. We respectfully suggest that the circuit court consider the issue on remand, including the fact that the Revisor of Statutes Bureau, in preparing the 2005–06 Wisconsin Statutes, drafted a NOTE to follow Wis. Stat. § 939.616(1): "NOTE: The cites are to s. 948.02(1)(b) or 948.025(1)(a) *as affected by 2005 Wis. Act 430*. See the notes to ss. 948.02(1) and 948.025(1)." (Emphasis added).[6]

## C. Due Process

¶ 41. Thompson contends that his "due process rights were violated" because he was not informed until after his trial that he faced a mandatory minimum sentence of 25 years in prison if he was convicted.

¶ 42. The constitutional basis for a due process claim is found in the Fifth and Fourteenth Amendments to the United States Constitution and in Article I, Section 8 of the Wisconsin Constitution. The Fourteenth Amendment provides in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Wisconsin Constitution provides in relevant part: "No

---

[6] We also observe that Act 430 did not create a section "939.616." It created a section "939.617." Another act, 2005 Wisconsin Act 433, also created a section "939.617," which was completely different from the section created by Act 430. The Revisor of Statutes Bureau renumbered the Act 430 section to "939.616." The Act 433 section "939.617" remained as passed. In short, both sections survived.

person may be held to answer for a criminal offense without due process of law." Wis. Const. art. I, § 8.

¶ 43. Courts have had difficulty pinpointing the meaning of due process. According to Chief Justice Earl Warren, "'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." *Hannah v. Larche,* 363 U.S. 420, 442 (1960). According to Justice Oliver Wendell Holmes, "[D]ue process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation." *Moyer v. Peabody,* 212 U.S. 78, 84 (1909).

¶ 44. This court offered a broader comment a century ago:

> What is due process of law? There is nothing very technical about it when we view the subject broadly. Due process of law means, in brief, the law of the land—including the unwritten law. It is, simply, *that which must be followed* in depriving any one of anything which is his to enjoy until he shall have been divested thereof by and according to the law of his country.

*Ekern v. McGovern,* 154 Wis. 157, 240, 142 N.W. 595 (1913) (emphasis added).

¶ 45. As implied by the quotation from this court, "due process of law" has the capacity to be interpreted expansively—in determining what "must be followed" —to achieve a desired objective. Conversely, "due process" may be interpreted narrowly to prevent an undesired result.

¶ 46. *Corpus Juris Secundum* took a good stab at defining "Procedural due process":

> Procedural due process means that persons whose rights may be affected are entitled to be heard, and in order that they may enjoy that right, *they must first be notified;* correlatively, *this right to notice* and opportu-

nity to be heard must be extended at a meaningful time and in a meaningful manner. The elements of procedural due process are *notice* and an opportunity to be heard, or to defend or respond, in an orderly proceeding, adapted to the nature of the case in accord with established rules.

16C C.J.S. *Constitutional Law* § 1444, at 188 (2005)(emphasis added)(footnotes omitted).

¶ 47. Thompson's due process argument is that although he was provided notice that, upon conviction, he could face imprisonment for up to 60 years on each count, this notice was inadequate because it did not inform him of the mandatory minimum prison term that was lurking behind every conviction, thus depriving him of the ability to assess risks and conduct his defense with full knowledge of the stakes.

¶ 48. This argument does not rely on statutory law. It relies on principles imported from other cases and applied to the facts here by analogy. For instance, Thompson points to *State v. Martin,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991), and *State v. Wilks,* 165 Wis. 2d 102, 477 N.W.2d 632 (Ct. App. 1991), two cases that interpreted Wis. Stat. §§ 973.12(1)[7]

---

[7] Wisconsin Stat. § 973.12(1) provided in pertinent part:

973.12 Sentence of a repeater. (1) Whenever a person charged with a crime will be a repeater as defined in s. 939.62 if convicted, any prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea. The court may, upon motion of the district attorney, grant a reasonable time to investigate possible prior convictions before accepting a plea. If such prior convictions are admitted by the defendant or proved by the state, he shall be subject to sentence under s. 939.62 unless he establishes that he was pardoned on grounds of innocence for any crime necessary to constitute him a repeater.

See *State v. Martin,* 162 Wis. 2d 883, 888 n.1, 470 N.W.2d 900 (1991).

and 971.29[8] with respect to adding or amending repeater charges after the defendant has entered a plea. Both cases turned on statutory interpretation, even though the statutes appeared to have a due process underpinning.

¶ 49. The *Martin* court quoted *Block v. State,* 41 Wis. 2d 205, 210, 163 N.W.2d 196 (1968):

> The allegation of recidivism is put in the information in order to meet the due-process requirements of a fair trial. When the defendant is *asked to plead,* he is entitled to know the extent of his punishment of the alleged crime, which he cannot know if he is not then informed that his prior convictions may be used to enhance the punishment.

*Martin,* 162 Wis. 2d at 900–01 (emphasis added by *Martin* court).

¶ 50. *Wilks* explained that the supreme court in *Martin* "declared that the policy behind sec. 973.12(1), Stats., is to satisfy due process by assuring that a defendant meaningfully understands the extent of potential punishment at the time of the plea," *Wilks,* 165 Wis. 2d at 109, especially "when a defendant pleads

---

[8] Wisconsin Stat. § 971.29 provided as it does now:

971.29 Amending the charge. (1) A complaint or information may be amended at any time prior to arraignment without leave of the court.

(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

(3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

*See Martin,* 162 Wis. 2d at 889 n.3.

guilty." *Id.; see also State v. Stynes,* 2003 WI 65, ¶ 34, 262 Wis. 2d 335, 665 N.W.2d 115.

¶ 51. Thompson also cites *State v. Mohr,* 201 Wis. 2d 693, 700–01, 549 N.W.2d 497 (Ct. App. 1996), in which the court of appeals correctly stated that a plea may be involuntary if the defendant does not have a complete understanding of what might or could happen to him in his sentence, particularly the possibility of a presumptive minimum sentence.

■

¶ 52. These cases are distinguishable from this case because *Martin, Wilks,* and *Stynes* involved statutory interpretation. Additionally, *Wilks* involved a no contest plea where the State attempted to amend the penalty enhancement provision in the complaint *after* the plea was entered; *Mohr* also involved a no contest plea. Dispositive pleas of guilty or no contest must be knowing and intelligent as well as voluntary. *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 635–36, 579 N.W.2d 698 (1998); *State v. Brown,* 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906.

¶ 53. Thompson's due process argument does not rely on the interpretation of a statute, and Thompson did not enter a dispositive plea. Thus, he cannot claim that he was surprised by the result *of his plea,* inasmuch as he went to trial. Rather, he must argue that his lack of information about the mandatory minimum sentence prevented him from making an "informed decision on whether to plea bargain," i.e., what concessions he might make—in response to an offer or on his own initiative— to avoid going to trial on two offenses carrying mandatory minimum penalties. "The analysis," Thompson explains,

> is largely a cost-benefit analysis. The defendant weighs the probability of prevailing at a trial by jury and its

inherent risk of more severe penalties if losing the jury trial, with a plea bargain. The greater the penalties the defendant faces when losing at trial, the more likely a defendant is to accept, or at least pursue, a plea bargain.

¶ 54. Argument along this line impressed the circuit court, but not the court of appeals, which cited *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977), for the proposition that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."[9] *See also State v. Tkacz,* 2002 WI App 281, ¶ 27, 258 Wis. 2d 611, 654 N.W.2d 37.

¶ 55. The court of appeals stated that, "regardless what information Thompson possessed, the prosecutor in this case could have refused to engage in plea bargaining." *Thompson,* No. 2009AP1505–CR, unpublished slip op., ¶ 7.

What remains is Thompson's assertion that he has a due process right to be fully informed of the possible penalties so that he can make an informed decision whether to *pursue* a plea agreement. But a comparable argument was rejected by the United States Supreme Court in *Weatherford.* . . . [T]he *Weatherford* Court rejected the proposition that [an undercover agent's] "continued duplicity lost Bursey the opportunity to plea bargain." [*Weatherford,* 429 U.S. at 560].

*Thompson,* No. 2009AP1505–CR, unpublished slip op., ¶ 8.

¶ 56. Earlier this year, the United States Supreme Court issued two decisions, *Missouri v. Frye,* 566 U.S. __, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper,* 566 U.S. __, 132 S. Ct. 1376 (2012), that take the constitutional

---

[9] "It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977).

status of plea bargaining to a new level. The two opinions open "a whole new field of constitutionalized criminal procedure: plea-bargaining law." *Lafler v. Cooper*, 132 S. Ct. at 1391 (Scalia, J., dissenting).

¶ 57. Both decisions focus on ineffective assistance of counsel, but they take on added significance because the Court reiterated that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to the effective assistance of counsel." *Frye*, 132 S. Ct. at 1406 (quoting *Padilla v. Kentucky*, 559 U.S. __, 130 S. Ct. 1473, 1486 (2010))(internal quotation marks omitted).

¶ 58. The Court observed that "Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Id.* at 1407. Then it added:

> The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system." Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992).
>
> . . . .
>
> [A] plea agreement can benefit both parties. In order that these benefits can be realized . . . criminal defendants require effective counsel during plea negotiations. "Anything less . . . might deny a defendant 'effec-

tive representation by counsel at the only stage when legal aid and advice would help him.'"

*Id.* at 1407–08 (citations omitted).

¶ 59. Because these cases focus on the course of legal representation by the defendant's attorney, it is unclear whether the principles stated in the two cases have any application to other key actors in the criminal justice system.

¶ 60. *Frye* and *Lafler* were argued in the Supreme Court on October 31, 2011—more than three weeks after Thompson's case was argued in this court. The cases were decided on March 21, 2012. Consequently, the effect of the two cases on Thompson's due process argument has not been briefed and should not be decided without thorough input from counsel, especially if this court can dispose of the case on less impactful grounds.

### D. Violation of Wis. Stat. § 970.02(1)(a)

¶ 61. This brings us to Thompson's statutory argument with respect to Wis. Stat. § 970.02(1)(a). The statute reads as follows:

*Duty of a judge at the initial appearance.*

(1) At the initial appearance the judge shall inform the defendant:

(a) Of the charge against the defendant and shall furnish the defendant with a copy of the complaint which shall contain the possible penalties for the offenses set forth therein. In the case of a felony, the judge shall also inform the defendant of the penalties for the felony with which the defendant is charged.

Wis. Stat. § 970.02(1)(a).

696

¶ 62. The statute imposes several mandatory duties on the judge:

(1) The judge *shall* inform the defendant of the charge against the defendant.

(2) The judge *shall* furnish the defendant with a copy of the complaint.

(3) The complaint furnished by the judge *shall* contain "the possible penalties" for the offenses set forth in the complaint.

(4) In the case of a felony, the judge *shall* personally inform the defendant of the penalties for the felony or felonies with which the defendant is charged.

¶ 63. In this case, the circuit judge performed the first two duties. If a mandatory minimum sentence does *not* apply to Thompson, the circuit judge performed all four duties. However, if the mandatory minimum sentence in Wis. Stat. § 939.616(1) does apply to the charges against Thompson, the circuit judge did not satisfy his third and fourth obligations. The judge did *not* furnish the defendant with a complaint that contained "the possible penalties" (a mandatory minimum sentence upon conviction certainly qualifies as a "possible penalty"). The circuit judge also did *not* personally inform the defendant of the possible penalty of a mandatory minimum sentence. In fact, he inadvertently misled the defendant into relying on the penalty in the complaint.

¶ 64. The threshold question, therefore, is whether the mandatory minimum sentence applies. If it does not, the State did not err in drafting the complaint, the circuit judge did not err in performing his statutory duties, and defense counsel did not err when he did not inform Thompson that he was facing the possibility of

697

two mandatory minimum terms of 25 years in prison and conduct his defense accordingly.

¶ 65. On the other hand, if the mandatory minimum penalty applies, the prosecutor erred, the court erred, and defense counsel erred, and we must explore the consequences.

¶ 66. Prior to mid-1973, Wis. Stat. § 970.02(1)(a) provided:

> (1) At the initial appearance the judge shall inform the defendant:

> (a) Of the charge against him and shall furnish the defendant with a copy of the complaint.

Wis. Stat. § 970.02 (1971–72). The Wisconsin Statutes Annotated carries a comment on Chapter 255, Laws of 1969, which created that provision: "The furnishing of a copy of the complaint will assist [defense] counsel in the preparation of the case, since normally counsel first sees a defendant either in jail or in his office and does not have access at that time to court records."[10] Wis. Stat. Ann. § 970.02 at 435 (West 2007).

¶ 67. In 1973, the legislature approved 1973 Senate Bill 189, which amended § 970.02(1)(a), requiring the judge to inform the defendant:

> (a) Of the charge against him and shall furnish the defendant with a copy of the complaint *which shall contain the possible penalties for the offenses set forth therein. In the case of a felony, the judge shall also inform the defendant of the penalties for the felony with which the defendant is charged.*

Chapter 45, Laws of 1973, § 1 (emphasized language represents the new language in the law).

---

[10] This "comment" is a "NOTE" prepared by a Criminal Rules Committee established by the Judicial Council in 1967.

¶ 68. The bill analysis prepared by the Legislative Reference Bureau states: "The bill also requires the judge presiding at the initial appearance to inform those accused of felonies of the penalties they face."

¶ 69. Significantly, the main authors of Senate Bill 189 were Senator Roger Murphy and Senator William Bablitch, both of whom had been district attorneys and both of whom went on to become distinguished judges. Justice Bablitch, of course, served 20 years on this court.

¶ 70. The text of the statute is plain. The inference drawn from the text and the legislative history is that the legislature expected the Wisconsin criminal justice system to provide defendants and their counsel with fair notice of the charges and the possible penalties that accompany those charges, including any mandatory minimum penalty.

¶ 71. The State contends that notwithstanding apparent errors by nearly everyone involved before sentencing, Thompson *forfeited* his right to challenge the insufficiency of the complaint. The State points to Wis. Stat. § 971.31, which reads in part:

> (2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, *insufficiency of the complaint,* information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached.
>
> . . . .
>
> (5)(c) In felony actions, objections based on the *insufficiency of the complaint* shall be made prior to the

699

preliminary examination or waiver thereof or be deemed waived.

Wis. Stat. § 971.31(2) and (5)(c).

■

¶ 72. The State's position gives us pause. There is a recognized need for forfeiture in the criminal justice system. Nonetheless, forfeiture and waiver "embody very different legal concepts," forfeiture being "the failure to make the timely assertion of a right," waiver being "the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))(internal quotation marks omitted).

¶ 73. In *Ndina*, Chief Justice Abrahamson discussed forfeiture of rights as follows:

> [S]ome rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review. The purpose of the "forfeiture" rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal. The forfeiture rule also gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.
>
> In contrast, some rights are not lost by a counsel's or a litigant's mere failure to register an objection at trial. These rights are so important to a fair trial that courts have stated that the right is not lost unless the defendant knowingly relinquishes the right. As the court explained in *State v. Huebner*, 2000 WI 59, ¶ 14, 235 Wis. 2d 486, 611 N.W.2d 727, "a criminal defendant has certain fundamental constitutional rights that may

700

only be waived personally and expressly," including "the right to the assistance of counsel, the right to refrain from self-incrimination, and the right to have a trial by jury. . . . Such rights cannot be forfeited by mere failure to object."

*Ndina,* 315 Wis. 2d 653, ¶¶ 30–31 (footnotes omitted).

¶ 74. This helpful discussion raises questions of when a defendant may avoid a forfeiture for failure to timely assert a right, especially if the right is not deemed to be a fundamental constitutional right.

¶ 75. Relying on Wis. Stat. § 971.31(2) and (5), the State insists that Thompson, who admittedly had no knowledge of a mandatory minimum sentence in his case, *forfeited* his right to raise the issue, except in the context of an ineffective assistance of counsel claim.

¶ 76. Wisconsin Stat. § 971.31(2) and (5) address the *timing* of objections. There are a few occasions in which the forfeiture rule does not apply because the defendant is not in a position to make a timely objection. *See Ndina,* 315 Wis. 2d 653, ¶ 140 (Prosser, J., concurring) (*citing Walton v. Briley,* 361 F.3d 431 (7th Cir. 2004); *State v. Vanness,* 2007 WI App 195, 304 Wis. 2d 692, 738 N.W.2d 154). Use of the phrase "deemed waived" and the word "waiver" in § 971.31 may imply that a defendant should understand, or at least be able to perceive, what he is expected to object to.

¶ 77. There are also situations in which § 971.31, by its terms, may not apply. For instance, Thompson is really complaining about more than the "insufficiency of the complaint" or "information," which are specifically addressed in the statute. Thompson also is complaining that the judge failed to personally inform him of the mandatory penalties he faced for the felonies and that his lack of information was never remedied, so that neither he nor the State understood what was at stake at trial or before trial.

¶ 78. We believe it would be unreasonable to strictly apply § 971.31 to a situation in which the entire courtroom was operating under a mistaken understanding of the law. The criminal complaint appeared to be correct on its face. Its defect was latent because the listing of "potential penalties" was incomplete. As a result, the defendant and his counsel were given misleading information, which is exactly the opposite of Wis. Stat. § 970.02(1)(a)'s intent.

¶ 79. The court of appeals did not rely on Wis. Stat. § 971.31 to reverse. It turned instead to Wis. Stat. § 971.26, which provides:

> No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form *which do not prejudice the defendant.*

Wis. Stat. § 971.26 (emphasis added).

¶ 80. We note at least three other statutes worth discussing in this context. Wisconsin Stat. § 805.18 is entitled "Mistakes and omissions; harmless error."

> (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the *substantial rights of the adverse party.*

> (2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of . . . the improper admission of evidence, or for error as to any matter of pleading or procedure, *unless* in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, *it shall appear that the error complained*

*of has affected the substantial rights of the party* seeking to reverse or set aside the judgment, or to secure a new trial.

Wis. Stat. § 805.18 (emphasis added).

¶ 81. Wisconsin Stat. § 968.22 provides:

*Effect of technical irregularities.*

No evidence seized under a search warrant shall be suppressed because of technical irregularities *not affecting the substantial rights of the defendant.*

Wis. Stat. § 968.22 (emphasis added).

¶ 82. Wisconsin Stat. § 971.29 reads in part:

(1) A complaint or information may be amended at any time prior to arraignment without leave of the court.

(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof *where such amendment is not prejudicial to the defendant.* After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

Wis. Stat. § 971.29 (emphasis added).

¶ 83. These four statutes—Wis. Stat. §§ 971.26, 805.18, 968.22, and 971.29—demonstrate that while the legislature does not demand perfection in criminal procedure, it is nonetheless sensitive that procedural deficiencies not "prejudice the defendant" or affect a defendant's "substantial rights."

¶ 84. The court of appeals grasped the complexity of the situation when it chose to focus on the "prejudice" element in Wis. Stat. § 971.26 instead of applying Wis. Stat. § 971.31. However, the court of appeals did not

have a complete factual record on the various facets of prejudice, and no one claims to have anticipated the Supreme Court's decisions in *Frye* and *Lafler*.

¶ 85. Assuming without deciding that the mandatory minimum sentence applies to Thompson, we conclude that the failure to inform Thompson of the mandatory minimum sentence violated Wis. Stat. § 970.02(1)(a) and that the error was never corrected. We conclude that this case must be remanded to the circuit court for a hearing to determine whether Thompson was prejudiced by the violation. The prejudice determination must satisfy the traditional standard for overcoming harmless error, that is, there must be a reasonable probability that the error contributed to the outcome of the action or the proceeding at issue. *Weborg v. Jenny*, 2012 WI 67, ¶ 68, 341 Wis. 2d 668, 816 N.W.2d 191. We expect the circuit court to make a threshold determination whether the mandatory minimum penalty applies to Thompson and if it does, whether the Supreme Court's recent decisions in *Frye* and *Lafler* affect the issue of prejudice.

### E. Ineffective Assistance of Counsel

¶ 86. Because we reverse the court of appeals decision, we do not need to determine whether the court exceeded its authority and neglected to adhere to prior precedent when it decided issues of ineffective assistance of counsel.

¶ 87. Ultimately, the court of appeals recognized that a potential ineffective assistance of counsel claim is still alive. Assuming but not deciding that the mandatory minimum sentence applies to Thompson, the failure of Thompson's defense attorney to discover this fact, inform Thompson of this fact, and incorporate this

fact into his defense strategy, is likely to be assessed as deficient performance if Thompson should file an ineffective assistance of counsel claim. However, if Thompson were to make such a claim, he would also be required to establish prejudice from the deficient performance as the second prong of such a claim. *See Domke,* 337 Wis. 2d 268, ¶ 34. We remand this case to the circuit court, so that all facets of possible prejudice to the defendant may be examined at the same time if an ineffective assistance of counsel claim is made and if the mandatory minimum sentence applies.

## III. CONCLUSION

¶ 88. We reverse the court of appeals decision. We remand the case to the circuit court, which has not yet sentenced the defendant. Upon remand, we expect the circuit court to make a threshold determination as to whether the mandatory minimum sentence applies to Thompson's conviction. If the circuit court determines that the mandatory minimum sentence does not apply to Thompson's conviction, there was no error in failure to provide Thompson with notice of a mandatory minimum sentence. If the circuit court determines that the mandatory minimum sentence does apply to Thompson, the circuit court should determine whether Thompson was prejudiced by the violations of Wis. Stat. § 970.02(1)(a). Additionally, the circuit court should reconsider the due process claim in light of *Frye* and *Lafler.* Should Thompson bring an ineffective assistance of counsel claim, the circuit court should consider that claim in light of the discussion in this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

705

¶ 89. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I agree with the majority's mandate reversing the decision of the court of appeals that reversed the circuit court's order granting Harry Thompson's motion for a new trial and remanding the cause to the circuit court. *See* majority op., ¶ 13. However, I do not join the majority opinion because unlike the majority, *see id.*, ¶¶ 9, 40, I would decide the issue of whether the mandatory minimum sentence of 25 years, as set forth in Wis. Stat. § 939.616(1) (2005–06),[1] applies to Thompson. In particular, because Thompson was charged under the version of Wis. Stat. § 948.02(1)(b) that did not carry a mandatory minimum sentence of 25 years, I would conclude that the mandatory minimum sentence does not apply to Thompson. I would therefore reverse the decision of the court of appeals and remand the cause to the circuit court for sentencing consistent with this concurrence.

¶ 90. As explained by the majority, *see id.*, ¶¶ 27–39, as well as the assistant district attorney at the January 29, 2009, hearing on Thompson's motion for a new trial, *see id.*, ¶ 20, the legislature simultaneously enacted two acts: 2005 Wis. Act 430, which created a mandatory minimum sentence of 25 years for those persons convicted of a violation of Wis. Stat. § 948.02(1)(b), and 2005 Wis. Act 437, which did not create such a mandatory minimum sentence. In this case, the State charged Thompson under the version of § 948.02(1)(b) that did not carry a mandatory minimum sentence.

¶ 91. Both Act 430 and Act 437 renumbered Wis. Stat. § 948.02(1) (2003–04) as Wis. Stat. § 948.02(1)(b) and amended its language. *See* 2005 Wis. Act 430, § 3;

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

2005 Wis. Act 437, § 1. The two versions of § 948.02(1), while enacted on the very same day, are mutually inconsistent. *See* note to § 948.02(1). Act 430 renumbered Wis. Stat. § 948.02(1) (2003–04) as Wis. Stat. § 948.02(1)(b) and amended it to read: "Whoever has sexual intercourse with a person who has not attained the age of *12 years* is guilty of a Class B felony." 2005 Wis. Act 430, § 3 (emphasis added). By contrast, Act 437 renumbered Wis. Stat. § 948.02(1) (2003–04) as Wis. Stat. § 948.02(1)(b) and amended it to read: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of *13 years* is guilty of one of the following: . . . (b) If the sexual contact or sexual intercourse *did not result in great bodily harm to the person,* a Class B felony." 2005 Wis. Act 437, § 1 (emphasis added).

¶ 92. For our purposes today, it is significant that Act 430 created Wis. Stat. § 939.617, since renumbered to Wis. Stat. § 939.616,[2] effecting a mandatory minimum sentence of 25 years for those persons convicted of either Wis. Stat. §§ 948.02(1)(b) or (c) or 948.025(1)(a). *See* 2005 Wis. Act 430, § 1. Act 437, however, did not create such a mandatory minimum sentence. *See* note to Wis. Stat. § 939.616(1) (clarifying that the citations in § 939.616(1) to Wis. Stat. §§ 948.02(1)(b) and 948.025(1)(a) are those "affected by 2005 Wis. Act 430").

¶ 93. As the majority aptly notes, the legislature's approval of Act 437, which renumbered and amended the very same statute that Act 430 had renumbered and amended but which did not create a mandatory mini-

[2] Because 2005 Wis. Act 433, enacted the very same day as both Act 430 and Act 437, created a different statute that was also numbered Wis. Stat. § 939.617, *see* 2005 Wis. Act 433, § 15, the Revisor of Statutes Bureau renumbered as Wis. Stat. § 939.616 the Wis. Stat. § 939.617 created by Act 430, pursuant to its authority under Wis. Stat. § 13.93(1)(b). *See* third note to Wis. Stat. § 939.616.

mum sentence applicable to such statute, "raises the question whether both provisions existed—as fraternal twins—at the time Thompson was prosecuted." Majority op., ¶ 37. In other words, we are left with the "legitimate question[]" of whether the mandatory minimum sentence of 25 years applies to Thompson in the first instance. *See id.,* ¶ 27.

¶ 94. Unlike the majority, *see id.,* ¶¶ 9, 40, I would definitively answer that legitimate question. To determine whether the mandatory minimum sentence applies to Thompson, I would begin by assessing the allegations of the complaint and information. Because Thompson was charged under the version of Wis. Stat. § 948.02(1)(b) renumbered and amended by Act 437, the act that did not create a mandatory minimum sentence of 25 years, I would conclude that the mandatory minimum sentence does not apply to Thompson.

¶ 95. The State charged Thompson with two counts of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1)(b), alleging that on September 6, 2007, and again on September 21, 2007, Thompson had "sexual intercourse with a child under the age of thirteen, [T.L.G., born June 4, 1998], which did not result in great bodily harm to said child." The complaint advised Thompson that a violation of § 948.02(1)(b) is a Class B felony which, pursuant to Wis. Stat. § 939.50(3)(b), subjects Thompson to a term of imprisonment not to exceed 60 years.

¶ 96. The State's allegation that Thompson twice violated Wis. Stat. § 948.02(1)(b) by having sexual intercourse with *a child under the age of 13 years,* which *did not result in great bodily harm to the child,* informs us that the State charged Thompson under the version of § 948.02(1)(b) renumbered and amended by Act 437, rather than Act 430. This is so because the version of § 948.02(1)(b) renumbered and amended by Act 437 is

708

the version that applies to a victim under the age of 13 years and that differentiates between sexual intercourse that resulted in great bodily harm to the victim and sexual intercourse that did not result in great bodily harm to the victim. *See* 2005 Wis. Act 437, § 1.

¶ 97. Moreover, it is clear from the record that nobody involved in the case was under the impression that the mandatory minimum sentence applied to Thompson. Specifically, the record indicates that the district attorney did not intend to charge Thompson under the version of Wis. Stat. § 948.02(1)(b) that carried a mandatory minimum sentence, defense counsel was unaware of the mandatory minimum sentence, the circuit court did not advise Thompson of the mandatory minimum sentence, and Thompson was not otherwise aware of the mandatory minimum sentence.

¶ 98. Because I would conclude that the mandatory minimum sentence of 25 years does not apply to Thompson, I would not address the remaining issues of whether the failure to inform Thompson of the mandatory minimum sentence violated either his right to due process or Wis. Stat. § 970.02(1)(a), and if so, whether Thompson was prejudiced by the violation. I further would not address whether defense counsel's failure to discover and inform Thompson of the fact of the mandatory minimum sentence constituted deficient performance. Instead, I would remand the cause to the circuit court for sentencing consistent with this concurrence.

¶ 99. For the foregoing reasons, I respectfully concur.

¶ 100. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.