# COURT OF APPEALS
# DECISION
# DATED AND FILED

## November 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2022AP906**
**2022AP966**
**STATE OF WISCONSIN**

Cir. Ct. No. 2019TP28

**IN COURT OF APPEALS**
**DISTRICT I**

APPEAL NO. 2022AP906

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.G.B., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

C.B.,

      RESPONDENT-APPELLANT.

**APPEAL NO. 2022AP966**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.G.B., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

    **PETITIONER-RESPONDENT,**

    **V.**

**N.M.M.,**

    **RESPONDENT-APPELLANT.**

---

    APPEALS from orders of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge.  *Affirmed*.

¶1      DONALD, P.J.[1]  The primary issue in this consolidated appeal is whether the Milwaukee County Clerk's Office (hereinafter, "Clerk's Office") failed to randomly select jurors as required by WIS. STAT. ch. 756, which outlines the procedure for jury selection.  As discussed below, I conclude that the Clerk's Office did not violate Chapter 756.  Additionally, I conclude that this is not an exceptional case warranting a new trial.

---

    [1]  These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

## BACKGROUND

¶2      On March 1, 2019, the State petitioned to terminate C.B.'s and N.M.M.'s parental rights to their daughter, N.G.B.  The petition alleged that C.B. and N.M.M. had failed to assume parental responsibility, and that N.G.B. was a child in need of continuing protection or services.

¶3      C.B. and N.M.M. both requested a jury trial.  The cases were joined for trial.  On February 24, 2020, a jury trial began, but resulted in a mistrial.

¶4      Subsequently, on August 23, 2021, a second trial commenced.  Prior to the start of the trial, the Clerk's Office assembled a thirty-four person jury panel for voir dire.  The last names of all of the jurors on the panel began with either the letter G or H.

¶5      After a break in voir dire, C.B.'s trial counsel requested that the panel be stricken.  Trial counsel stated:

> I guess at this point I would like to strike the entire panel.  I mean, there's not a single African-American person on the panel.  This is not a jury of [C.B.'s] peers.  It's problematic. He agrees and is not exactly happy with the panel.

N.M.M.'s trial counsel was silent and did not join the objection.

¶6      The State responded, stating that "I just don't think that's the legal standard as to whether or not there should be a new jury."

¶7      The trial court denied the motion.[2]  The trial court stated:

---

[2] The Honorable Ellen R. Brostrom presided over the trial on August 23, 2021.  The Honorable Joseph R. Wall presided over the post-disposition proceedings.  We refer to Judge Brostrom as the trial court and Judge Wall as the circuit court.

> So [C.B.] is entitled for the jury to be selected at random from eligible jurors without regard to race or any other defining characteristic. I know that the way our jury panels are selected is that they're randomly pulled from the Wisconsin Department of Transportation, and then they are randomly drawn through CCAP to show up here for voir dire.
>
> I know that Milwaukee County generally draws a roughly represented group from DOT in terms of proportion of minority representation and various racial group's representation through the randomized process. And so I think that does satisfy due process.

¶8 After the denial of C.B.'s motion, the jury was selected. The jury ultimately found grounds to terminate C.B.'s and N.M.M.'s parental rights. The trial court found that C.B. and N.M.M. were unfit, and that it was in N.G.B.'s best interests to terminate C.B.'s and N.M.M.'s parental rights.

¶9 C.B. filed a post-disposition motion, which contended that the Clerk's Office failed to randomly select jurors for the jury panel as required by WIS. STAT. ch. 756. The motion argued that selecting jurors whose last names began with "G" and "H" was not random.[3]

¶10 Attached to C.B.'s post-disposition motion was an affidavit from the Clerk's Office's Jury Services Manager.[4] In the affidavit, the Jury Services Manager explained that her responsibilities included "generating the makeup of the Milwaukee County jury panels," which included the panel at issue here.

---

[3] C.B. also contended that there was an "improper bypass of the jury venire procedure" and "improper favoritism inherent in the 'reserve juror' system," but then withdrew these claims after further investigation.

[4] The Milwaukee County Corporation Counsel's Office stipulated that, in lieu of a subpoena, a sworn statement from the Jury Services Manager would suffice to meet C.B.'s evidentiary needs while conserving the valuable time and resources of the Clerk's Office.

Because the Children's Court facility had an occupancy limit of thirty-six jurors in August 2021, the Clerk's Office used "reserve jurors," who are standby, alternate jurors, to populate the jury panels. When selecting the reserve jurors, the first step was to determine how many reserve jurors were needed on a given date. She would then take the number of needed reserve jurors and "try to match that number to the total number of jurors with last names beginning with one or more sequential letters" until she reached the desired number.

¶11    N.M.M. filed a post-disposition motion, joining C.B.'s motion. However, because N.M.M.'s trial attorney did not join C.B.'s objection during trial, N.M.M. also asserted an ineffective assistance of counsel claim.

¶12    A post-disposition hearing took place on September 6, 2022. The circuit court denied the post-disposition motions. At the start of the hearing, the circuit court found that C.B.'s trial attorney's objection preserved the issue.

¶13    After hearing argument on the merits, the circuit court found that "looking at how many people [are] need[ed], and let's say it's 50, and then sort of eyeballing the list of potential reserve jurors and saying 'well, the letters J and K pretty much get me there,'" is a random selection. The circuit court explained that "the fact that the number of people [the Jury Services Manager] needs changes every time she needs to select, that shows a randomness in and of itself of the number she needs, and therefore, the choices she has when she goes to the alphabet." The circuit court further stated that "the way that the [C]lerk's [O]ffice does it is just as random as putting 500 names in a lottery ball, like we use here when we pick who the alternate juror is going to be." Lastly, the circuit court found that N.M.M.'s ineffective assistance of counsel challenge failed.

**DISCUSSION**

¶14    On appeal, C.B. and N.M.M. renew their post-disposition argument that the Clerk's Office violated WIS. STAT. ch. 756's requirement that jurors comprising a jury panel must be randomly selected.

¶15    WISCONSIN STAT. § 756.001(4) provides that:  "[a]ll persons selected for jury service shall be selected at random from the population of the area served by the circuit court" and that "[a]ll qualified persons shall have an equal opportunity to be considered for jury service in this state[.]"  The statute further provides that:  "[a]ny manual or automated method of selection that provides each qualified person with an equal probability of selection for jury service or that provides each prospective juror with an equal opportunity for assignment to a particular trial may be used." *Id.*

¶16    Whether a litigant's constitutional rights were violated, and statutory construction issues are questions of law that this court reviews independently. *State v. Thompson*, 2012 WI 90, ¶¶14-15, 342 Wis. 2d 674, 818 N.W.2d 904.

¶17    Here, C.B. and N.M.M. contend that the selection of the jury panel was not random because the Jury Services Manager:  (1) "chose to select groups of jurors according to the alphabetic sequence of their surnames;" and (2) "chose where in the alphabet to start her selection of groups of jurors according to the alphabetic sequence of their surnames."  C.B. and N.M.M. admit that there is nothing in the record to suggest that the Clerk's Office engaged in any willful misconduct, but suggest that the choice of the starting letter could affect the racial composition of the jury panel.  For example, they note that for non-Hispanic white Americans, the letter S began four of the top ten surnames; whereas none of the

6

top ten surnames with the closest relationship to a person being African American began with the letter S.[5]

¶18    The State and Guardian ad Litem ("GAL") agree that if the Clerk's Office always started with one specific letter for the compilation of the jury panel, then the process would have the potential not to be random. However, they contend that here, the jurors were selected at random because the Jury Services Manager looked over the entire list and tried "to match [the number of jurors] to the total number of jurors with last names beginning with one or more sequential letters, until [she] reached the desired number."

¶19    I agree with the State and GAL that the compilation of the jury panel was random. It is clear from the Jury Services Manager's description that she did not select jurors based on any specific characteristics, such as race, sex, or age. Rather, the Jury Services Manager would select jurors based on the number of jurors needed and then "try to match that number to the total number of jurors with last names beginning with one or more sequential letters" until she reached the desired number. As the circuit court explained, the fact that the number of jurors needed could change based on the particular date, demonstrates "a randomness in and of itself … and therefore, the choices she has when she goes to the alphabet."

---

[5] N.M.M. additionally contends that this court should exercise its discretionary authority and disregard her trial attorney's failure to object, or in the alternative, find that N.M.M. received ineffective assistance of trial counsel. Generally, an individual forfeits the right to appellate review of alleged errors in the jury selection process by failing to object. *See State v. Erickson*, 227 Wis. 2d 758, 765-66, 596 N.W.2d 749 (1999). That being said, forfeiture is a rule of judicial administration and a reviewing court may therefore disregard forfeiture and address the merits of an unpreserved issue in the appropriate case. *State ex rel. Universal Processing Servs. of Wis., LLC v. Circuit Court of Milwaukee Cnty.*, 2017 WI 26, ¶53, 374 Wis. 2d 26, 892 N.W.2d 267. Here, given that there was an objection—albeit not from N.M.M.'s trial attorney—which the trial court ruled on, I decline to apply the forfeiture rule and address the merits.

¶20   Moreover, there is no indication that the Jury Services Manager was selecting jurors based on a specific letter.  For example, it is undisputed here, that at the February 2020 trial, which ended in a mistrial, the jurors on the panel had last names starting with A, B, C, D, and E.  Conversely, in the August 2021 trial, which resulted in verdicts, the jurors on the panel had last names starting with G and H.  Thus, I conclude that the Clerk's Office complied with WIS. STAT. ch. 756, and C.B. and N.M.M. are not entitled to a new trial.[6]

¶21   Alternatively, C.B. and N.M.M. contend that this court should exercise its discretionary authority under WIS. STAT. § 752.35 to order a new trial. WISCONSIN STAT. § 752.35 provides that this court may order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]"  This discretionary power of reversal, however, "is formidable, and should be exercised sparingly and with great caution."  *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719.

¶22   In support of their request for a new trial, C.B. and N.M.M. place emphasis on the fact that the jury panel did not have any African Americans.  I agree with C.B. and N.M.M. that racially diverse juries are important. *See State v. Spencer*, 2022 WI 56, ¶¶87-93, 403 Wis. 2d 86, 976 N.W.2d 383 (Dallet, J., dissenting) (providing a detailed discussion of the importance of racially diverse juries to enhancing a jury's performance in criminal trials and the public's perception of fairness in the judicial system).  I also agree that the better practice

---

[6] Because the underlying merits of C.B. and N.M.M.'s argument fails, I do not address whether harmless error applies. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

would be for the Clerk's Office to use a tumbler or automated system to compile names. However, I am not persuaded that this case is an "exceptional" case warranting a new trial. *See State v. Armstrong*, 2005 WI 119, ¶114, 283 Wis. 2d 639, 700 N.W.2d 98.

¶23 As discussed above, the Clerk's Office did not violate WIS. STAT. ch. 756. Moreover, a disproportionate representation of a distinctive group on one jury panel standing alone is not sufficient to prove systematic representation, *see State v. Pruitt*, 95 Wis. 2d 69, 76, 289 N.W.2d 343 (Ct. App. 1980), and "[d]efendants are not entitled to a jury of any particular composition," *see Taylor v. Louisiana*, 419 U.S. 522, 702 (1975).

¶24 Finally, C.B. and N.M.M. note that the judge who presided over the August 2021 jury trial had remarked in a different jury trial several months before that she "actually was pretty impressed with the number of people of color that we had compared to many panels that I've seen" and "you know, if we had zero people of color maybe we would send it back for a new randomized panel, but I don't think that this falls below the threshold of due process concerns." This, however, would seemingly violate random selection.

¶25 In *Oliver v. Heritage Mutual Insurance Co.*, an African American plaintiff in a personal injury action asked the trial court to place "some minority" persons in the jury array. *Id.*, 179 Wis. 2d 1, 4-5, 505 N.W.2d 452 (Ct. App. 1993). To avoid the "appearance of impropriety," the trial court decided to send the array back and another random selection took place and there were no African Americans in the array. *Id.* at 6. The plaintiff requested to add an African American juror to the array, which the trial court granted. *Id.* at 6-7. Later, the trial court ordered the same juror to be placed on the voir dire panel. *Id.* at 8. On

9

review, this court found that the trial court's intrusion into the random process violated both statutory and case law even though the error was not prejudicial. *Id.* at 10-11. Here, the suggestion that the trial court should have sent the jurors back for a new panel would be contrary to *Oliver*.

¶26 Therefore, I decline to grant a new trial. I do, however, commend the parties for their clear, well-developed, and thoroughly investigated arguments.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.